Sebastiana C. Coster and John V. L. Pruyn, Respondents, v. The Mayor, Aldermen and Commonalty of the City of Albany, Appellants.

The fact that the State is not subject to an action on behalf of a citizen does not establish that he has no claim against the State, or that no liability exists from the State to him; but only that there is no proper tribunal to try the claim, and no remedy.

If one person contract, whether with or without seal, with another for the benefit of a third person, such third person may maintain an action on the agreement.

Depreciation in the value of property, resulting from alterations and changes made in the neighborhood, for a public purpose, under an act of the legislature, in general furnishes no ground of action to the owner of the damaged property while it remains intact.

Accordingly, where, in pursuance of an act of the legislature, a public bridge, connecting a pier with the adjoining land, was removed, by reason of which it was made necessary, in order to reach the store of the plaintiffs, to go over another bridge at a much greater distance. — Held, that the damages resulting to the plaintiffs' property were too remote, and could not be recovered in an action brought against a municipal corporation, who by bond had assumed the liability of the State.

(Argued December 9, 1870; decided January 24, 1871.)

Appeal from a judgment of the General Term in the third judicial district, affirming a judgment entered on a verdict rendered in favor of the plaintiffs, on a trial at the Albany circuit, for $1,200.20 and costs, for alleged damages done to lot No. 122, on the Albany pier. The complaint alleges that the plaintiffs were the owners of lot No. 122, on the Albany pier; that, by virtue of an act of the legislature of the State of New York, entitled "An act to improve the Albany basin, in the city of Albany, and to provide the means therefor," passed April 11, 1866, the public authorities, authorized by said act, proceeded to make changes in the Albany basin lying between said lot and Quay street, in said city, and cut away and

removed that portion of the Albany pier lying adjoining to and at the south of said lot, and in so doing undermined the foundation of the building standing on said lot, which obliged the plaintiffs to expend, in making necessary repairs thereto, the sum of $364.24. It also alleges that, under said act, a bridge at the south end of said pier was removed, cutting off communication between the south end of the pier and the city, except by the State street bridge, which was at a much greater distance from said lot; and that, by reason of the removal of·such bridge, the plaintiffs were damaged to the extent of $3,000; that, by an obligation entered into by the defendants under said act, they had assumed to pay all damages caused to property by the making of the improvements under said act. The obligation, after reciting the statute, contained an agreement by the defendants with the State to "assume the payment, and that they will pay, for any injuries to any of the bridges crossing said basin (except the Hudson river railroad bridge) that shall hereafter occur or arise in consequence of the improvement made in the basin, as provided in said act, and also will pay all damages caused to property by the making of such improvement, if any such shall arise or accrue, and hereby assume all liability therefor," etc.

The answer denies that the defendants are in any way liable to the plaintiffs for the damages alleged in the complaint.

The case came on to be tried at the Albany circuit, January, 1868, before Mr. Justice PECKHAM and a jury, when the jury found for the plaintiffs $400.20 for the first class of damages, and $800 for the second.

From the judgment entered thereon the defendants appealed to the General Term, where the judgment was affirmed; and from such judgment of affirmance, this appeal was taken to this court.

*N. C. Moak* and *William H. Greene*, for the appellant, that before the act of 1823 the State held the bed of the Hudson river in trust for the people. (*Hart* v. *Mayor of Albany*,

9 Wend., 584; *People* v. *Land Appraisers*, 33 N. Y., 461; *People* v. *Gutchess*, 48 Barb., 656, 657; *People* v. *Cent. R. R. Co.*, id., 479–509; *Martin* v. *Waddell*, 16 Peters, 410; *La Playance* v. *City of Monroe*, Walker's Mich. Chancery, 155; *Woodman* v. *Kilbourne*, 6 Am. Law Reg., U. S., 241.) The *Tinicum Fishing Co.* v. *Carter* (61 Penn. St. Rep.) The city of Albany had power to erect wharfs, to regulate wharfage, etc. (*Corning* v. *Green*, 23 Barb., 39, 45, 54, 56; *Hart* v. *Mayor*, 9 Wend., 585.) Neither right of soil of basin nor public easement was ever granted to the pier proprietors. (*Hart* v. *Mayor*, *supra*, also 3 Paige, 216, 217; *Smith* v. *Comptroller*, 18 Wend., 662–3; *Follett* v. *People*, 12 N. Y., 276.) The right of city to collect wharfage also remained. (*Mayor* v. *Trowbridge*, 5 Hill, 71–73; *Buckbee* v. *Brown*, 21 Wend., 112.) The basin was not by act of 1823 made part of the canal. (*Hart* v. *Mayor*, *supra*.) Not by act of 1849. (*Follett* v. *The People*, 12 N. Y., 276.) The State made no contract with the pier proprietors; only gave them a license. (*Corning* v. *Green*, *supra*; *Hart* v. *Mayor*, *supra*.) The legislature may discontinue highways. (*Macy* v. *City of Indianapolis*, 17 Ind., 267–8; matter of Furman, 17 Wend., 649; *Gozler* v. *Georgetown*, 6 Wheaton, 593; *People* v. *Kerr*, 27 N. Y., 212, 213; *Zimmerman* v. *Union Canal*, 1 Watts. & Serg., 346; *Susquehanna Canal Co.* v. *Wright*, 9 Watts & Serg., 9.) That defendants were not liable for consequential and remote damages. (*Lansing* v. *Smith*, 8 Cow., 146; 9 Wend., 23; *Smith* v. *The City of Boston*, 7 Cush., 254; *Galen* v. *Clyde, etc.*, 27 Barb., 543; *Graves* v. *Otis*, 2 Hill, 467; *Wilson* v. *Mayor*, 1 Den., 595, etc., etc., citing a large number of cases.) That plaintiff cannot recover for injury resulting from digging too near the lot. (Ang. on Highways, §§ 213–215; *Callender* v. *Marsh*, 1 Pick., 418.) The owner of land has a right to support his soil in a natural condition, but not a superadded structure. (*Radcliff* v. *Mayor*, 4 N. Y., 196–201–4; *Panton* v. *Holland*, 17 Johns., 92; *Wyatt* v. *Harrison*, 3 Barn. & Ad.; 23 Eng. C. L., 871; *Partridge* v. *Scott*, 3 Mees. & Welsb., 220; *Board*,

*etc.*, v. *Railroad Co.*, Law Rep., 3 C. P., 621–625.) The owner must support his building. (*Lasala* v. *Holbrook*, 4 Paige, 173; *Peyton* v. *Mayor*, 9 B. & C., 17 Eng. C. L., 725.)

*A. J. Parker*, for the respondent, that act was passed by inducement of defendant, and that defendant is therefore liable. (*Herring* v. *Hoppock*, 15 N. Y., 409; *Davis* v. *Newkirk*, 5 Denio, 92.) That third party may sue on an agreement made for his benefit. (*Lawrence* v. *Fox*, 20 N. Y., 268; *Van Schaick* v. *The Third Ave. R. R. Co.*, 38 N. Y., 346–354; *Secor* v. *Lord*, 3 Keyes, 525; *Ricard* v. *Sanderson*, 2 Hand, 179; *Turk* v. *Ridge*, id., 256; *Thorp* v. *Keokuk*, 47 Barb., 439–446.) That removal of lateral pressure gave right of action. (*Farrand* v. *Mashall*, 21 Barb., 409; S. C., 19 id., 380.) That the act of 1868 includes contingent damages. (Sedgwick on Statutes, 238; *Cone* v. *Alger*, 7 Cush., 53–89.)

Folger, J. In this court, the appellants make four points: 1st. That the respondents were not entitled to damages, by reason of the removal of the Hamilton street bridge. 2d. Nor for the taking of lands near their's, by which their's were rendered less convenient for dockage and unloading, and thereby less valuable. 3d. Nor for injuries alleged to have been sustained by digging too close to their lands, and undermining their foundations. 4th. That there is no privity between the respondents and the appellants, by which the last are liable in an action to the first. On reference to the complaint in the action, it is seen, that it alleges but two causes of damages in two counts; and asks relief but for those damages. 1st. The first count states a cause of action, for so prosecuting the work under the statute, as to undermine the foundation of the plaintiffs' building, and render it insecure, whereby it became necessary for them to expend a sum named, which they did expend. 2d. The second count states a cause of action, for the injury to the plaintiffs by the removal of the Hamilton street bridge, making access to their

property less easy and convenient, and rendering it impossible for vessels to lie there. On the trial at the circuit, all testimony on the question of damages was taken subject to objection by the defendants, the specific grounds of which they were not required to state as each question was asked, but were permitted to give as a whole at the close of the plaintiffs' case. The objections at that time stated, and the exceptions to the ruling of the court, and the positions taken on a motion for a nonsuit, and the exceptions then taken, will bring up for the consideration of this court, all the points here made by the appellants.

It is to be observed, that though evidence was given, applicable to the first count in the complaint, and tending to show damage of the nature and causes as therein alleged, no proof was made of the amount of damage resulting to the plaintiffs from the undermining of the plaintiffs' building, and thus rendering it insecure. There was proof, however, of direct damage inflicted upon the plaintiffs' building, in the tearing out of brick work, and of bearings, and of cross-beams. And there was proof of what it cost to repair the building in these particulars. And that sum, and the interest on it, the jury found for the plaintiffs, as one of the items of their verdict. The case states the verdict on that item to have been rendered " upon the first alleged ground, or cause of action set forth in the complaint."

The judgment entered upon the verdict slightly enlarges upon the allegations in the complaint, and upon the items of the verdict, thus " by the undermining of the building, and destruction of the wall." The verdict and the judgment cannot be sustained upon the first cause of action, as it is stated in the complaint, for there is no proof in dollars and cents of any damage from that cause. And although the verdict and judgment are correct in the amount, and there was proof of that amount of damage sustained, yet it was sustained from a cause not alleged in the complaint. So that the verdict and judgment cannot be sustained on that item without amendment, if such objection has been taken. This

testimony of the amount of damage, and the particular cause
by which damage was sustained, was received without objec-
tion, other than the objections made in a group at the close
of the plaintiffs' case. One of these objections was, that the
evidence should be confined to the issue, and the special
allegations of injury set up in the complaint. At no other
stage of the case, does it appear that the defendants' counsel
raised any objection, or asked for any action or ruling of the
court, based upon this especial variance of the proofs from
the allegation of the complaint. And the case shows that the
objections were reduced to writing, and given to the steno-
grapher of the court; nor does it appear that the attention of
the judge was called to them in detail. If this objection had
been singly and promptly brought to the attention of the
learned judge who presided at the circuit, it would at once
have struck him that the testimony was inadmissible under the
plaintiffs' pleading, and he would have rejected the testimony
or have directed an amendment of the pleading, or would
have conformed the pleadings to the proofs. (Code, § 173.)
As will appear hereinafter, the plaintiff had a right of action
for that direct damage; and the testimony would fully sustain
a recovery for the amount of the verdict rendered. It does
not appear in the papers that the point has ever been made by
the defendants, other than as above noted, that here was a
variance between the pleading and the proof. In the very
elaborate points of the appellants' counsel in this court, the
ground is not taken that this testimony is not in accord with
the allegations of the complaint, nor is the ground here taken
that for the damages proven, direct and immediate, to the
plaintiffs' building, thus shown by the testimony, there was not
a liability to them existing against some person or body corpo-
rate. It is plain that the case has not been brought up for
review on account of this variance. There will be no surprise
upon the defendants, then, if we treat the case as if this objec-
tion had been waived, as we doubt not it has.

Then we come to the principal questions presented for our
decision; and they are: What liability did the city assume?

Was there such a relation of the plaintiffs to the defendants as that an action will lie in their favor against them, and for what damages to their property can the plaintiffs recover?

The consideration of these will cover all the points made in this court by the appellants' counsel.

The work contemplated by the provisions of the statute brought under consideration in this action was a public one, to be performed by public agents, under due authority of law. No question is made but that the act is constitutional. No private property was to be taken for public use, without just compensation. The work is styled *an improvement,* in different sections of the act. It is to be inferred that it was an improvement in itself desirable, and one which the State was willing to undertake. It is quite apparent, however, that the agents of the State were uncertain what would be the sum ultimately needed to meet the cost and expense of the work itself, and the payment of such damages to property of private owners, as it was the practice of the State to make compensation for. So that, though the State was willing to undertake the work, and considered the doing of it as desirable, it is very manifest from various provisions of the statute authorizing it that the legislature would not sanction it without limiting the expense of it to the State, and restricting its agents to a specified sum. And, further, it is manifest that the legislative intention was that no part of the appropriation from the State treasury should be applied to the payment of damages to property, or for property taken, or to any other outlay than the cost and expense of the work itself to be done. The seventh section of the act makes the appropriation of $35,000, and provides that *the expense* to be incurred under the act to be paid by the State shall not exceed that sum. In the second section an incidental work is authorized, if it can be done *without expense to the State.* In the fourth section a subsidiary work is directed, if it can be done for a sum not to exceed $5,000, in addition to the value of the land to be reclaimed by it; which sum would come out of the appropriation of $35,000, for the last is the sole appropriation. In the fifth section

another like work is authorized, if it can be done *without any cost or expense to the State.* It will be seen from this recapitulation that there is prominent in the whole act, in all of its provisions for action of the State, this determined purpose of the legislature, while it gave authority for the work, to keep the expense to the State within a fixed limit. The legislature was also fearful of the claims for damage which would be made by owners of property. And quite as prominent in the provisions of the statute is the intention that there should be no payment by the State of damages to private owners. And it is therefore provided that the State *shall not be liable for any damage* caused to property, and that before any work shall be done under the act, the city of Albany shall give formal assent to assuming such liability; and it in terms enacts that such damage shall be paid by the city. Another thing is apparent; that the State and the city of Albany were the parties to the transaction and arrangement which took definite shape in this statute. The restrictive provisions of the act were for the protection and indemnity of the State, and the provisions for the assumption of liability by the city, and the giving of its assent and obligation, were to make the city the indemnitor of the State. There is no intention to be found in it, as being its prime spirit and purpose, of providing protection, safeguard or compensation for the owners of property to be affected. The State was to be saved harmless, but no unnecessary burden was to be put upon the city. Thus, by section five, one piece of work is authorized, so that it may be done without cost, expense or liability for damages, either to the State *or to the city.* In other words, the State would merely permit. If the owners of property to be affected by that particular operation chose to pay the cost and expense and remit the damage to their property, asking them not of the State *or city*, then the work might be done by the agents of the State. So the work mentioned in section two might be done, but the State would incur no expense, and the owners of property must consent in writing to its being undertaken before it should be entered upon. The ideas prominent

in the legislative mind were to effect the improvement desired, without exceeding a fixed sum for the expense of the work upon it, and without the begetting of claims against the State for damages to property. The first was sought to be attained by limiting in the act the amount to be expended; the second by placing the city of Albany between the State and liability. And if there is found in the act any provision, the effect of which is to compensate owners of property, or to make good to them damages they have sustained, it is an effect following upon the prime purpose of a full indemnity to the State. It was of course recognized that the court could not take private property for public use, without a just compensation therefor, and that its agents could not inflict injury directly upon property without liability. And it was meant that, instead of the State, the city of Albany should make that compensation and meet that liability. The result, then, of the passage of the law by the legislature, and the assent of the city of Albany to its provisions, its assumption of liability and the giving of its obligation, so far as the questions involved in this action are concerned, was to put the city in place of the State, as to making compensation for private property taken, and as to any liability to claims for damages. In its general purpose and effect the act made no new rule of damages, and extended no unwonted protection to owners of property. Whether it did so by particular phrases will be hereafter considered. By the act the State would do the work. The city is then liable to pay all the damages which the State would be legally liable to pay, by reason of any lawful act of its agents, done by the authority of this statute. Now here it may be said that then the city is not liable at all, for as the State is not subject to suit by its citizens, and whatever it pays, it pays as matter of grace, there can no legal liability have arisen which the city has assumed, and against which it has indemnified. But to this there are two answers. 1st. The fact that the State is not subject to an action in behalf of a citizen does not establish that he has no claim against the State, or that no liability exists from the

State to him. It only shows that he cannot enforce against the State his claim, and make it answer in a court of law for its liability. What is made out by this objection is, not that there is no liability and no claim, but that there is no remedy. If the owner of the property was a citizen of another country or another State, then, but for an express restriction of the federal Constitution, the right to sue would exist, and the liability could be enforced (U. S. Constitution, Amendment XI), which shows that it is not freedom from liability which shields the State from suit, but the lack of a tribunal in which to show and enforce the liability. (*Oswald, adm'rs,* v. *State of New York,* 2 Dallas, 415.) 2d. And quite as satisfactory an answer is, that though in strictness of theory the State cannot be made by one of its citizens a defendant in an action to enforce his claim against it, yet in fact and in practice the State does recognize and admit that it may be liable to its citizens for damage to their property, done by its agents in carrying out its projects. And by general and special enactment of its legislature, it has, from time to time, provided either for direct payment, or has created a tribunal before which the claim may be litigated and by which it may be determined. Indeed, the State, as much as one of its citizens, is subject to the fundamental law, which is its organic existence, and though it may exercise its right of eminent domain, yet it cannot take private property, though for public use, without making just compensation therefor. It cannot, for an invasion of this provision, be sued directly, but its agents may be sued and enjoined. And as an abstract proposition, a liability does exist on its part to its citizen to a legal claim for damage to his property, though he may be without a tribunal to which he may cite it for redress. In this sense, then, the State might become liable to these plaintiffs, and they might have a claim against it, for just that damage to their property for which any public authority less than the State would be liable to them, which, under the sanction of this act, had done this work without willful act or malice.

It follows, then, that the city, by the assumption of the liability of the State and its covenant to pay and indemnify, put itself in precisely that position. It would be idle for the State, if it stood upon the ground that it could not be liable for damage, to ask and insist upon, as a condition precedent to entering upon the work, that it should be furnished with indemnity against liability. If it be said, that, as the State cannot be sued, it is practically not liable, and therefore the obligation of the city binds not, for there is nought against which it is to protect, the answer is, if the State meant to assume that position, and to say that it was not liable, then it needed not protection, and would not have sought for indemnity. The evident desire of the legislature for indemnity, its placing the freedom of the State from claim for damage *in limine* the doing of this work, shows that it expected claims, and meant that they should not be evaded by technicality, but fairly met. Though so far as not being subject to suit might free the State from liability for its acts, its usage has been to do full justice to the citizen in its dealings with him and his property. The legislature was conscious, that, though the State could not be summoned to the permanent and general forum, and made, by process of law, to answer to a claim, yet that there was a forum erected by practice and long legislative use, in which it was liable, and in which the State was used to respond in damages. And the effect of this act, and of the assent of the city, and of its obligation, is to put the city in the place of the State, and for the city to take on such relations to the owners of property affected by this work as the State would have borne to them were it practically liable for its dealings with them and their property and amenable to process therefor. Any claim on the part of those owners for damage to property, which a court would enforce against a body corporate acting under due authority of law, the city of Albany agreed to assume and pay, and against it to indemnify the State. We use the words, "which a court would enforce," with consideration. We are well aware, from the acts which crowd the statute-

book, that the legislature has gone far, and often beyond the line of legal liability, and has made provision for the hearing and payment of claims which a court of law would not entertain. But it was in the exercise of a sovereign grace; it was a bestowal of favor, not governed by rules, capricious and devious, following no well-marked and direct pathway. We are not disposed to hold that the city is bound to do all, or anything which the State might be brought to do, as gracious accord to the petition of a citizen. For what that would be, could not be foreseen. And it is not a fair assumption that an indemnity would be given against it. But what, if it were amenable to process, could be got from it by compulsion. For so much, by this act, and this assent, and this obligation is the city of Albany liable; for that might enter into contemplation, and be compassed by reasonable forethought.

The next question is, to whom is the city of Albany liable? The sixth section of the act provides that the State shall not be liable for any damage to property, caused by the making of the improvement; but that if any claim shall arise, the same *shall be paid by the city of Albany*, which shall give its *assent to assuming such liability* and indemnifying the State against the same. So far as this action is concerned, the question above put is mainly affected by the provisions of this sixth section. The city did give its assent, and did covenant to assume the payment, and that *it would pay all damages* caused to property by the making of the improvement. It did thereby assume all liability, and did agree to save harmless and indemnify the State against any claim or claims arising to the property.

It is to be observed, that the instrument executed by the city to the State is not a bond. The city is not bound in a penalty, from which it may be discharged on the performance of a condition. So that the case of *Turk* v. *Ridge* (2 Hand, 206), is not applicable. The instrument is an agreement of the city, under its corporate seal, with the State, for the protection and indemnity of the State, and the payment of all damages caused to property, and by it the city doth in terms

assume all liability therefor.   In consideration that the State
would  do  this work, and  in view of the  certain  result, that
damage must be  done to property in the doing of it, the city
makes to the State this promise, that it will pay that damage.
Here is the  promise,  the  consideration  and  the  promisee,
definitely brought out.   The ultimate beneficiary  is uncer-
tain.      It is settled in this State, that  an agreement made
on a valid consideration, by one with another, to pay money
to a third, can  be  enforced  by  the  third in his own name.
(*Lawrence* v. *Fox*, 20  N. Y., 268 ; *Secor* v. *Lord*, 3  Keyes,
525.)   And though a distinction has sometimes been made in
favor of  a simple contract (*Hall* v. *Marston*, 17  Mass., 575 ;
*D. & H. Canal Co*. v. *W. Co. Bank*, 4 Den., 97), it is now
held that when  the agreement is in writing, and  under  seal,
the same rule prevails.  (*Van Schaick* v. *Third Av. R. R*.,
38  N. Y., 346 ; *Ricard* v. *Sanderson*, 2  Hand, 179.)   Nor
need the third person be  privy to  the  consideration.  (*Secor*
v. *Lord*, *supra*.)   Nor  need  he  be  named  especially as  the
person to whom the money is to be paid.   In that class of
cases, which holds that a grantee of  mortgaged premises, who
takes them  subject to  the  lien  of  the  mortgage, which, by
words in the deed of conveyance to him, he assumes to pay,
is personally liable  to  the  holder  of  the  mortgage,  for the
amount of the mortgage debt, no question seems to be made ;
but that the action may be maintained in the holder's name,
though the agreement be not made immediately for the bene-
fit of the plaintiff, nor  he  be  named  in  the  deed.   Thus in
*Burr* v. *Beers* (24  N. Y., 178), the  clause in the deed des-
cribed the mortgages as held by John  Cramer, which mort-
gages the grantee thereby *assumed to pay*.   And the case last
cited was not  an action in equity, for the  foreclosure of the
mortgage, in which the mortgagor and his grantee were both
parties.  (See page 179.)   It was an action  to  recover a per-
sonal judgment against the grantee.   The question was dis-
tinctly raised, that there was no  privity of contract  between
the plaintiff  and defendant.   And the decision against the
defendant was put in the language of DENIO, J., " upon the

broad principle, that if one person make a promise to another *for the benefit of a third person*, that third person may maintain an action on the promise." In this case, the city agreed to pay all damages caused to property, and assumed all liability therefor. This was a promise made to the State, for the benefit of any third person, to whose property damage was caused. Nor is it an anomaly, that the liability which the city assumes, is not in existence at the date of its obligation, nor that the person who is to be benefited by it is not then known. So it is with the official bonds of sheriffs and other public officers. And see, *People* v. *Holmes* (5 Wend., 191). In *Dutton* v. *Poole* (3 Bos. & Pull., 149, note *a*.), and in *Schermerhorn* v. *Vanderheyden* (1 J. R., 139), the promisee was, at the time of making the promise, under no legal liability to the person for whose benefit the promise was made.

Our conclusion is that the city became liable to the plaintiffs in this action, and that they may maintain their action against it upon the facts as they appear. The next question is, to what extent is the city liable to the plaintiffs? There are two sections of the act, the provisions of which affect the liability of the city under its assumption and obligation. The third section provides that, if certain bridges shall be injured in consequence of the improvement, such damages shall be assumed and paid by the city of Albany. The damage here indicated is one to the bridges as pieces of property, and the payment is to be made to the owners of the bridges for any injury to their property. It is not meant that damage to property other than the bridges themselves, shall be paid for, resulting from an injury to the bridge. The sixth section provides that the State shall not be liable for any damage to property caused by making the improvement, but if any claim shall arise, the same shall be paid by the city of Albany. We have already shown that the general intent of the whole act was that the city alone should take the place of the State in answering for damages caused by such improvement, and that the damage was such as would form a legal claim against the State were it amenable to process; nor do we see anything in

the words and phrases of this section which compel a construction more broad than that. " Damage " and " claim " are words having a well defined meaning in statutes and legal instruments. And for so much as they rightfully convey, for so much is the city bound. "What is a claim ? It is, in just judicial sense, a demand of some matter, *as of right*, made by one person of another to do or forbear to do some act or thing *as a matter of duty*." (*Prigg* v. *Penn'a*, 16 Peters, 615.) The plaintiffs may claim no more of the city than the law will give them as a matter of right. The city need pay as much as the State should pay, as matter of duty. The parties are remitted, then, to the settled rules of law, to find how great is the right, how onerous the duty.

The plaintiffs' claims are of two kinds ; one is for damage, direct and immediate, done to their property in the prosecution of this work. For this the city must answer. This was the damage caused in the process of tearing down the building next that of the plaintiffs'. In doing this, brick-work, and bearings, and cross-beams of the plaintiffs' building were torn out. There is no assertion or proof that this was done unnecessarily, carelessly or wantonly. It seems to have been an immediate, direct, natural and necessary result of the removal of the adjoining building, and the removal of that building was essential to the proper prosecution of the work under the act. To rebuild the brick-work torn out and repair the ends of the building of the plaintiffs , where the bearings and cross-beams were displaced, was an expense to the plaintiffs of $364.24, and for this sum and the interest on it, probably the jury gave to the plaintiffs the item in their verdict of $400.20. There is testimony, to be sure, that the excavation at the side of the building, and the jarring of it from the driving of piles near it, were injurious to it. But there is no testimony of any amount of damages from these causes, nor do we see that the jury awarded the plaintiffs anything therefor. It is not needed, then, that we determine whether damages therefrom may be lawfully claimed by the plaintiffs, so far as the verdict of the jury is to be sustained. The

plaintiffs further claim that the best approach to their property having been by the Hamilton street bridge, and that having been entirely removed by the agents of the State, a damage has resulted to their property for which the city is liable. No part of the bridge was on the property of the plaintiffs. They had no interest or right in it as property. There is left to the plaintiffs an approach to their property by the State street bridge, though less near, less easy, less commodious. The damage to the plaintiffs' property from this cause is entirely indirect and remote. It is not claimed to the contrary, and we shall assume that the State had right, by virtue of this act or from other source, to do this work, and in doing it to remove this bridge. The bridge, so far as the plaintiffs were interested in it, was but a part of a public street or highway. Over streets and highways the legislature has control, and may, when no private interests are involved or invaded, close them, and altogether relinquish their use by the public. (*The People* v. *Kerr*, 27 N. Y., 188–92.) And if in the exercise of this right a street be discontinued, and the value of lands abutting on other parts of the street, and on neighboring streets, is lessened, it is not such an injury to the owner as to entitle him to damages. (*Smith* v. *City of Boston*, 7 Cush., 254.)

In that case Shaw, Ch. J., says: "The damage must be the direct and immediate consequence of the act complained of, and remote and contingent damages are not recoverable. The petitioner has free access to all his lots by public streets. The burden of his complaint is that in going to some of his houses, in some direction, he may be obliged to go farther than he otherwise would. The inconvenience sustained was not such an injury done him in his property as to entitle him to damages." The case cited seems quite analogous to that under consideration. Here the sole complaint of the plain tiffs is that by the removal of the Hamilton street bridge they are forced to use the public approach to their lands by the State street bridge, and that though by this way access may be had to them, it is not so direct, so near, nor so com-

modious. This is an injury, not the direct and immediate result of the removal of the bridge first mentioned. The removal was effected, so far as appears, with care, for the benefit of the public; and it was done by authority of the legislative act. Assuming that the statute did not by some particular provision or phraseology provide for the payment of consequential damages or such as may result to persons whose lands are not taken or immediately injured, the State would not have been liable for the damages claimed by the plaintiffs as following from the removal of this bridge, nor is the city liable. (*Radcliff's ex'rs* v. *The Mayor*, 14 N. Y., 195; *Hatch* v. *Vermont C. R. W.*, Redf. Am. R. W. cases, p. 291; S. C., 25 Vt., 49.) And so as to the damages to the plaintiffs' property, claimed to have been sustained, "because no vessel can now lie there as formerly before the lots south of it were cut away." If such damage was had, it was not immediate and direct; but remote and incidental. The property remained the same, intact. If its value has been lessened in this way, it is because other property, having been taken and paid for and removed, its absence renders the landing place less desirable. The plaintiffs have all that they ever had, save the resulting benefit from a neighbor's property. They can offer now the space and front they ever owned; and if it is less acceptable, it is because they cannot suggest the advantage of the land once adjoining which the new owner has chosen to change into water. Their property has not been lessened. The use of it, if their allegation is true, is of less value. This is a necessary consequential damage accruing to their premises, for which the defendants on general principles are not liable. (Redfield's Railway Cases, above cited, 291–97.) But it is claimed by the learned counsel for the respondents, that by this act the legislature has expressly provided for the payment of consequential damages. His first position is that this act could not have intended to provide only for the damage to an owner for the taking of his land, for the reason that there was already a general statute providing that "when any lands, waters or streams

appropriated by the canal commissioners to the use of the public shall not be given or granted to the State," it is made the duty of the canal appraisers to assess the damages (1 R. S., 225, § 46), and of the canal commissioners to pay the same. (Id., 226, § 53.) But this law is not applicable to this case, for the reason that by this act it was not the canal commissioners, but the contracting board, under the direction of the canal board, which was authorized to make the improvement, and to take the lands needed for it, and for the further reason that this act provides for damage other than for the taking of land, to wit., the direct and immediate damage to lands and property not taken. So that the provisions of the Revised Statutes do not cover the case, and no inference of an intent to provide for consequential damages is necessarily to be drawn from the fact of this act providing other and novel way of meeting the damage to property. As we have before shown, one of the chief purposes of the statute was to exempt and shield the State from liability, and to place it all upon the city of Albany, and it of necessity required an enactment to accomplish this; no provision of general law covered that case, and special enactment was made.

The next position of the learned counsel for the respondent is, that the sixth section of this act recognizes the right to compensation for all " damage to property caused by making such improvements," and provides for payment by the city and not by the State ; and that this section applies to consequential damages alone, from the fact that all damages for property taken were already expressly provided for by the general statute above cited, which damages were to be paid by the State. This is not tenable, for the reason already given, that the general statute, upon the existence of which this position is also based, does not apply to the result of the work under this act. And conceding, as we have, that the act does mean to care for other damages than those for land taken, still it may stop short of providing for consequential damages. It does provide for the direct damages to pro

perty other than the taking of it, and thus a scope is given to it broader than a provision only for lands taken.

The next position taken by the learned counsel for the respondent is, that since the judgment in *Lansing* v. *Smith* (4 Wend., 9), by which the plaintiff obtained damages for only direct injury to his lands, the legislature has been careful to supply the omission. And quotations are made from different statutes, in which comprehensive language has been used, as in chap. 163, Laws of 1835, page 171: "all such damages as the owner of property taken, or *in any manner injured or affected by* any of the improvements contemplated;" and in chap. 139, Laws of 1836, page 187: "all such damages as the owner of any property taken, or *in any manner, injured,*" etc, "injured *in consequence* of the opening;" and there are the like phrases in subsequent acts. But in this act of 1866 such phraseology is not used. It is to be supposed that this statute was not adopted without a knowledge on the part of the legislature of previous legislative action on this subject. When, then, in the penning of this act, a set of narrower phrases was used, we are obliged to infer, either that it was done heedlessly, or with the purpose of imposing a stricter measure of damages. The last is the inference to which proper observance of rules of interpretation forces us. (Dwarris on Stat., 707.) We have already stated that in our view the general purpose and intent of the statutes was to impose upon the city of Albany a liability for such damages to property as could, by rules of law applicable to such a case, be rightfully claimed by an owner of property. We find nothing in the phraseology of the statute to alter that view, in favor of owners of property in general. There is, to be sure, in the third section, this phrase: "If any of the bridges crossing said basin * * * * *shall be injured in consequence of* the improvement * * * such damages shall be assumed and paid by the city of Albany," which is different from the phrase in the sixth section, under which the plaintiffs bring action, where the phrase is simply, "*damage to property caused by the making of such improvement.*"

If we hold, as we are bound to, that this difference of words is of purpose, it strengthens the position that the sixth section was not meant to create an enlarged rule of damages, but to confine it within a narrower limit than that proposed by the third section. Stress was laid by the learned counsel for the respondents upon the phrase, " damage *to any property caused,*" used in the sixth section. It is to be observed, that this phrase is employed where the purpose is to declare that the State shall be kept free from liability for damage. This being one of the prime ideas in the mind of the draftsman, it might well be that the words used would be quite capacious. But yet we do not see that they imply more than we have above allowed to the act in its general scope. Damage to *any property* means that damage which is done by an injury inflicted upon property not taken but impaired, as well as that damage done by taking and appropriating it. "*Damage* to any property caused," is of no wider import than *damage* to any property. And more than that, the word caused is to be read with the following phrase, "by the making of such improvements," and others. It confines the damage to such as is done in the process of this particular work.

Our conclusion is, that the plaintiffs had a right of action against the defendants, for compensation for the injury direct and immediate to their property, but that they had no right of action for the depreciation in value arising from the removal of the Hamilton street bridge, which was indirect and contingent.

The judgment should be affirmed for $400.20 thereof, with interest, and reversed for $800 thereof, without costs to either party of this appeal.

All the judges concurring, except PECKHAM, J., who, having been a member of the court below, did not sit.

Judgment affirmed, to the extent of $400.20 damages, and reversed as to residue of recovery, without costs of this appeal to either party.