Owen, J.
1. It would be unprofitable to discuss in detail the several supposed defenses below, for they nearly all assume the vital, central fact that Brophy and Potter had a valid claim against the bridge company, and a valid lien upon the bridge at the time of its purchase by the commissioners. These supposed defenses mostly proceed upon the assumption that whatever liability Emmitt assumed by his bond was collateral to that of the bridge company, and aver that the plaintiffs had failed to invoke or pursue other remedies and securities within their reach. If Emmitt by his bond became principally and primarily liable to Brophy and Potter, they had their election of remedies and this is decisive against him of each ground of defense. In other words, if the facts alleged in the petition constitute a cause of action against him, they are not avoided by anything alleged in the answer. From the facts apparent upon the record, including the recitals of Emmitt’s bond, we are at liberty to infer that he was, practically, the bridge company ; that the other stockholders were such simply to vitalize the corporation, their interest in which was but nominal.
In his first defense Emmitt avers that: “ In the month of May, A. D. 1868, an act of the general assembly of the state of Ohio was duly passed, became a law, went into immediate effect and continued in force until the year A. D. 1880 ; which act authorized the said plaintiffs and empowered them to levy upon and sell said bridge on execution issued upon the judgment recited in their petition in this case, and by virtue of said act said plaintiffs did cause execution to be issued upon said *88 judgment and levied the same upon said bridge, which levy was subsisting and in full force at the time said bridge company sold and transferred said bridge to the commissioners of Pike county, who purchased the same regardless of said levy, and immediately caused said bridge to be used by the traveling public without payment of tolls, and caused the same to be and remain thenceforth in every respect a free bridge.”
This averrment is abundantly justified by the act referred to (65 O. L. 136). The plaintiffs had, by their levy, acquired a lien upon the bridge. By the express conditions of the bond, Emmitt agreed to “ pay off and liquidate all claims and demands, liens, and debts, whether in judgment or otherwise^ existing against said bridge.”
These facts are strongly suggestive that it entered into the contemplation of the parties to this bond at the time of its execution, that this particular lien of the plaintiffs upon the bridge was to be discharged by Emmitt. Its existence was known to them, and they seem to have left nothing to conjecture. Indeed, if Brophy and Potter had been expressly named as the lien-holders, it is difficult to see how this would have added to the definiteness of the bond, or made more certain the intention of the parties. This seems to be a conclusive answer to the suggestion that there is a want of privity between the immediate parties to the bond and the plaintiffs, which is chiefly relied upon by Emmitt as a defense. It is settled in this state that an agreement made on a valid consideration by one person, with another, to pay money to a third, can be enforced by the latter in his own name. Crumbaugh v. Kugler, 3 Ohio St. 549; Bagaley v. Waters, 7 Ohio St. 367; Trimble v. Strother, 25 Ohio St. 381; Thompson v. Thompson, 4 Ohio St. 333.
Nor need he be named especially as the person to whom the money is to be paid. Coster v. Mayor, 43 N. Y. 411.
The law regards that as certain which points to the sources of authentication or identification ; a principle which applies with special force to this bond.
The proposition that the rule invoked against Emmitt, is confined in its operation to simple and unsealed contracts, is *89 not well founded. Coster v. Mayor, 43 N. Y. 411; McDowell v. Laer, 35 Wis. 171; Rogers v. Gosnell, 51 Mo. 466. Tlie plea of tbe statute of limitations is equally untenable. Tbe action was properly prosecuted upon tbe written instrument which evidenced Emmitt’s liability. In bis “ fifth defense,” Emmitt avers that long prior to tbe filing of tbe plaintiffs petition herein, lie contended that be was not bound to pay the judgment, utterly refused to pay it, and “rescinded said alleged promise.” A rescission of tbe contract sued upon by tbe parties to it, prior to tbe plaintiffs assenting to it, would have been a good defense. Trimble v. Strother, 25 Ohio St. 378; Brewer v. Mauer, 38 Ohio St. 554; Crowell v. Hospital of Saint Barnabas, 27 N. J. Eq. 650. But tbe rescission contemplated by this principle is one by tbe parties, whereas the averrment of Emmitt is that be refused to pay tbe judgment and he rescinded the promise. It was not in bis power to do this. Tbe term- “ rescinded,” as be employs it, is convertible with “ repudiated.” It was as easy for him to repudiate, as singly to rescind bis promise.
Tbe plaintiffs’ election to proceed upon tbe bond is denied. Their action was such election. What effect this election may have bad upon their claim against tbe bridge company, or against tbe bridge, is not before us for determination.
Tbe defendant further relies upon the failure of the plaintiffs to assert their rights within a reasonable time, and allowing nine years to elapse before filing their petition. The duty of the plaintiffs to sue was no more urgent than that of Em-mitt to pay. Wherein, be was more prejudiced by their withholding their action than they were by bis withholding their money is not apparent. There having been no change in the status either of the parties or the contract, the statute of limitations furnished the only legal test of promptness in asserting their rights under the bond. In the action of the court upon the demurrers there was no error.
2. The plaintiff in error assigns as error the action of the court below in awarding the defendants in error interest on their costs in their original judgment.
A broad diversity of opinion and practice has for many *90 years obtained with the lawyers and courts of the state concerning the right to tax and collect interest on cost bills. The question has not heretofore been determined by this court, and its importance would seem to justify a careful consideration of the course of legislation concerning it.
“ An act to regulate the taxation and collection of costs ” passed March 9th 1835 (35 Ohio L. 51, and Swan’s Stat. of 1841, 404) provided :
Section 1, for taxing and entering of record separately the costs of the parties.
Section 2 provided that: “ On the rendition of judgment, in any cause, the costs of the party recovering, together with his debt or damages, shall ha carried into Ms judgment.”
Section 3 provided for endorsing on the execution for the judgment the amount of the costs of the party condemned, and for their collection by the officer, in the same manner and at the same time in which the judgment mentioned in the execution is collected.
Section 4 provided that: “ When the party recovering neglects to sue out execution immediately, or after such execution has been returned without satisfaction of costs, the clerk may, for his own benefit, or shall at the instance of any person entitled to fees in the bill of costs, taxed against either party, and by order of the court, issue against the party indebted to such clerk or other person, for such fees, whether plaintiff or defendant, an execution to compel the party to pay his own costs, in the following form, to wit:
“State of Ohio, county, ss: To the sheriff of the county of , greeting: Whereas, in a certain action of lately prosecuted in our court of common pleas . . wherein was plaintiff, and was defendant, the costs of said were taxed at dollars and cents. You are therefore commanded, that, of the goods and chattels, and for want thereof, of the lands and tenements of the said in your bailiwick, you cause to be made the costs aforesaid, with interest thereon, from the day of , A. D. [the date of the judgment] until paid, and costs that may accrue. . . Witness, &c.”
*91 Section 6 provides for the collection of costs adjudged against either party on continuances, amendments, or under any special rule, at any time after judgment or order of court awarding such costs, by process, the same in form as to interest as that prescribed in section 4.
The only provision for interest upon costs in the above enactments is to be found in the form of process therein prescribed. The language of these enactments has substantially remained to the present time unaffected by express modification or repeal. “ An act to regulate the fees of clerks of the courts of common pleas ” was passed May 1, 1852 (50 Ohio L. 218; Swan’s Stat. of 1854, 410), section 12 of which provided that: “No interest shall be taxed or collected on the cost bill of any suit or proceeding had in any of the courts of this state.”
In consequence, no doubt, of this provision, we find that in the form of process provided by the act of 1835, sv/pra, as it appears in Swan’s Revision of 1854, 423-4, wherever words regarding interest on costs occur they are in italics (a -familiar mode of indicating that the matter so italicized was obsolete or otherwise affected by other legislation). “ An act to regulate the fees of clerks of the courts of common pleas passed May 1, 1854 (52 Ohio L. 117; 1 S. & C. 628), expressly repealed the act which provided against interest on cost bills, and since that time there has been no express prohibition of such interest; while the form of process presciibed by the act of 1835, as we have already suggested, has remained unaffected by express modification or repeal (1 S. & C. 644; Rev. Stat. § 1321-3); but in each succeeding revision of the statutes since that of 1854, whenever in these forms words regarding interest on costs are used, they have with uniform constancy reappeared in italics, and hence subject to the suspicion of being under the disability either of modification, suspension or repeal. In reality they are unaffected by either. The worst fate that lias befallen them is, that during, the life of the enactment against interest on cost bills — just two years —their legal effect and operation were suspended. These prescribed forms are in effect a direct provision.
*92 They prescribe the command of the writ which the officer is bound to execute according to its terms ; that is, that he cause to be made of the property of the party liable therefor, the costs with interest thereon from the date of the judgment until paid. If it be contended that the provisions above cited do not reach the present case, they are certainly an index to the policy of the state, and aid us in construing the general le gislation of the state regarding interest.
We have already seen that: “ On the rendition of a judgment in any cause, the costs of the party recovering, together with his debt or damages, shall he carried into Ms judgment.” Rev. Stat. section 1319.
“ An act fixing the rate of interest,” passed January 12, 1824 (Swan’s Sta.t. of 1841, 465), provided that: “All creditors shall be entitled to recover interest . . on all judgments obtained from the date thereof.”
This act was in force at the time of the rendition of the original judgment, and remained in force until May 4, 1869, when it was repealed by “ An act to amend an act fixing the rate of interest,” which provides that: “ upon all judgments, decrees and orders of any judicial tribunal for the payment of money, arising out of any contract made or other transaction occurring after the passage of this act, the creditors shall be entitled to interest at six per cent, per annum, and no more.” (66 O. L. 91.) This provision has since remained unaffected. (Rev. Stat. § 3181.)
It seems clear to us, however, that section 3182 of the Revised Statutes, which has the force of a re-enactment as of January 1, 1880, is .decisive of the particular question before us in this ease. It provides that : “ All creditors shall be entitled to collect and receive interest . . upon all judgments, decrees and orders of courts heretofore rendered, precisely as if this chapter had not passed.” The general'question of the right of a party to recover interest upon costs taxed and adjudged in his favor has been the subject of judicial consideration in several of the states; but as the decisions of the courts are as various as the caprice of legislation in their respective *93 states, and are chiefly controlled by such legislation, the light they afford ns, is, at best, but feeble.
It is clear that at the common law, and in the absence of legislation, interest is not recoverable upon costs unless they are actually paid by him in whose favor they are taxed, when his right to it depends upon the general legislation affecting interest.
It is argued that payment of costs by the party entitled to recover them, creates a debt in his favor and that the general legislation upon the subject entitles him to interest upon the demand so created. Whoever may be equitably entitled to the costs when collected, his legal title to, and right to recover the unpaid costs, is clear (Abbey v. Fish, 23 Ohio St. 413), and as by force of section 1319 of the Revised Statutes, his costs are “ carried into his judgment;” and as he is liable at any time after failure to sue out process for his costs or the return thereof unsatisfied, to respond, upon the order of court, to a writ issued for the benefit of those entitled to them for the costs adjudged in his favor with interest thereon, it is difficult to see why his right to interest should depend upon his actual payment of such costs. 14 Viner’s Abridgment, 457; Butler v. Burk, 2 Salk. 623; Rogers v. Burns, 27 Penn. 528; Klock v. Robinson, 22 Wend. 157; Denning’s Appeal, 34 Conn. 204; McCausland v. Bell, 9 S. & R. 388; Hamer v. Highwood, 25 Miss. 95; Gatewood v. Palmer, 10 Humph. 466; Graham v. Newton, 12 Ohio, 210.
The forms of process prescribed for the collection of costs; the fact that but ffor two years in the history of the state, has the right to .interest on costs been the subject'of unfriendly legislation; the plainly declared policy of the state; a liberal and rational'construction, in the light of'such policy, of our legislation concerning interest, lead us to the conclusion that where a party or other person is entitled to costs in any judicial proceeding, which have been adjudged, ordered to be paid or for the collection of which execution is authorized, he is entitled to interest thereon from the date of the judgment or order, or from the time when execution is first authorized. This does not apply to - increased costs, or other costs not *94 adjudged or ordered, or for which execution is not authorized. In the action of the court below there was no error.

Judgment affirmed.