## THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK v. GEORGE T. HATT ET AL.

Argued June 2, 1908—Decided November 9, 1908.

1. The right of a property owner to damages for the vacation of a street, when his property is not deprived of all access, depends upon the statutory provisions for compensation.

2. Under the supplement to the charter of Newark (*Pamph. L.* 1862, *p.* 333) property owners are not entitled to damages for the vacation of a street, when the vacation does not deprive the property of all access.

On *certiorari.*

Before Justices GARRISON, SWAYZE and PARKER.

For the prosecutors, *Francis Child, Jr.,* and *Malcolm Mac-Lear.*

For the defendants Kilburn and Osborne, *Chandler W. Riker;* for Hatt and Brown, *Joseph A. Beecher.*

The opinion of the court was delivered by

SWAYZE, J.   The city of Newark, in pursuance of a contract with the Pennsylvania Railroad Company and the Central Railroad Company of New Jersey, vacated certain streets, near to, but not abutting upon, the lands of the defendants.   There was still access to the lands from the city, except by way of the portion of the streets vacated.   One of the streets on which the properties of Kilburn and Osborne abutted was made a *cul de sac.*   The Circuit Court held that the true rule for estimating damages was the direct and substantial depreciation of the market value of land, consequent upon such vacating, and that such depreciation was the test of whether an award or assessment of damages should be made, whether such land did or did not front on the vacated street or the vacated part of a street;   and that, in this matter, damages resulting from the

said vacating, and from the elevation of the said tracks and building or the structures necessary therefor, and the operation of the said railroads thereon, should be considered by the commissioners; and directed the commissioners to award to the objectors such damage as had resulted by reason of the vacating of the streets; and also the damage resulting from the elevation of the tracks and the building of structures in connection therewith, or incident thereto; and also the damage resulting from the operation of the railroads upon the elevated structures.

In pursuance of this order the commissioners reported that they had estimated and assessed the damage which the defendants had sustained by the vacating of the streets, and by reason of the elevation of the tracks, and the building of structures in connection therewith and incident thereto upon the said streets, and of the operation of the said railroads upon the said elevated structures.

In response to a rule of this court the commissioners have certified that they found that the properties were injured and the market value thereof decreased by the elevating and the erecting of the structures across the part of the streets vacated, but found that the abutment of the railroad did not interfere with the properties getting the amount of air and light they respectively got before such elevation, and that the operation of the railroads did not injure the property.

The report of the commissioners makes no distinction between damages arising out of the act of the city in vacating portions of the streets and those arising from the erection of the walls necessary to carry the elevated structure. Although nothing was awarded by reason of the obstruction to light and air we cannot say that the obstruction caused by the elevated structures was the same that would have been caused by the mere act of vacation. The Circuit Court and the commissioners seem to have thought that different elements of damage might be involved, and this may well be. The vacation affected only the public right. The owners of the lands may still have had some private rights of passage which were cut off by the act of the railroad companies in building their

structures; and even if no such private rights of passage were involved, it may be, for aught we can tell from the record, that temporary damage, caused by the necessary inconvenience due to the building of the structures, was included in the award. For such damages the city is not liable. The authority to award damages for vacating streets in Newark is found in the act of March 28th, 1862. *Pamph. L., p.* 333. This act provides that "Whenever the common council shall determine by ordinance to vacate any street, and any land will be taken by such vacating, the council are authorized to agree with the owner or owners of such land as to the amount of the damages and pay the same." This obviously relates only to the act of the city and not to the act of the landowner in subsequently building upon the portion vacated. We need not consider whether the liability of the city was increased by reason of the fact that the vacation was in pursuance of a contract with the railroad companies which had for its object the elevation of the tracks. That contract did not purport to bind the city to pay all damages, but one-half was to be paid by the companies. It was manifestly intended only to provide for an adjustment of this item of liability between the contracting parties, and not to confer legal rights upon others. As to third parties, the city and the railroad companies remained liable each for its own acts. Counsel for the defendants argued that the cases in the Court of Appeals of New York arising out of the elevation of the tracks of the New York and Harlem Railroad Company, established a different rule. Most of these cases were suits against the railroad company and not against the city, but it appears from the report of *Lewis* v. *New York and Harlem Railroad Co.,* 162 *N. Y.* 202, and *Sander* v. *State,* 182 *Id.* 400, that the work of building the elevated structure in that case was done by a board appointed by the mayor, which was directed to take the entire charge and control of the improvement, and that by statute the property owners were authorized to present their claims for damages for allowance to the court of claims of the State of New York. This presents a very different situation from the present case, in which the only act of the city was the vacation of the

streets, and all that was done subsequently was done by the railroad companies themselves upon their own responsibility. The charter of Newark contains no such provision as the New York act. It authorizes the common council to pay only when land is damaged by the vacation.

The more important question in the case is whether owners of land that does not abut upon the portion of the street vacated are entitled to damages where the access to their lands is not wholly destroyed. "The vacation of a street," we have said, "does not in the least impair private rights; it is only a surrender or extinction of the public easement." *United New Jersey Railroad Co.* v. *National Docks, &c., Co.,* 28 *Vroom* 523, citing *Dodge* v. *Pennsylvania Railroad Co.,* 16 *Stew. Eq.* 351; 18 *Id.* 366; *Read* v. *Camden,* 25 *Vroom* 347, 374. It is only because no private property rights of the landowner were affected that the rule denying damages in such cases in the absence of a statute could be sustained under our constitutional provisions. That rule found its justification in the necessity of entrusting to the public authorities the power to determine whether the public should continue to bear the burden of maintaining any particular highway. That was as much a matter of public administration as the paving of streets. The property owner may suffer special damage if the municipal authorities refuse to pave or neglect to keep a pavement in repair, just as he may suffer if they neglect to maintain a highway which gives more convenient access to his property. To hold that the landowner has a property right which would be injured by the abandonment of the public easement would prevent the municipal authorities from vacating the most useless highway and substituting a better one, without incurring liability to landowners, and would unduly hamper the administration of public affairs by substituting in effect the judgment of a jury in an action at law for the judgment of the municipal authorities. The damages arising from the vacation of a street, like the damages from a sewer, are incidental damages resulting from the proper exercise of the functions of the municipality, for which it is not responsible. *Simmons* v. *Paterson,* 15 *Dick. Ch. Rep.* 385, 388. Such in-

cidental damage is *damnum absque injuria*. *Marcus Sayre Co.* v. *Newark, Id.* 361, 367. It was considerations of this character that led to and justified the common-law rule exempting the municipality from liability to damages caused by the vacation of a street, at least in cases where access to property was not wholly destroyed. The reasons are well stated with ample citation of authorities in *Cooley Const. Lim.* (6th ed.) 251, 253, and 1 *Hare Am. Const. L.* 380. The rule has been adopted in this court (*Kean* v. *Elizabeth, 25 Vroom* 462), and by the Court of Chancery. *Dodge* v. *Pennsylvania Railroad Co., 16 Stew. Eq.* 351, 355, 356; both cases were affirmed by the Court of Errors and Appeals. The principle was carried to an extreme in some jurisdictions, and as population increased, and the difference between urban streets and rural highways became better understood, statutes were enacted of which the act of 1862 amending the charter of Newark is an instance. The right of the defendants to damages depends upon that act. It provides only for the payment for damages to land. This excludes personal damages to the individual arising out of the less convenient access to his property from certain parts of the city—a distinction well stated by Chief Justice Gibson in the *Philadelphia and Trenton Railroad Company Case, 6 Whart.* 25, 44. We think upon a fair construction it excludes also incidental damages arising from the proper execution of a municipal undertaking as in Simmons *v.* Paterson and Marcus Sayre Co. *v.* Newark. Personal damages and incidental damages to property may be special and justify the person injured in questioning the municipal proceedings by *certiorari* as in *Morris & Cummings Dredging Co.* v. *Jersey City, 35 Vroom* 142, and *Beecher* v. *Newark, Id.* 475, and may still not be such damages to land as the act of 1862 provides for. In the present case the defendants probably have suffered by the vacation of a portion of the street a depreciation of the value of their property, because it has a less convenient means of access to certain portions of the city and is situated upon only one thoroughfare instead of upon two, but this loss is the same in character that would be

caused by the failure of the city to pave the street or to keep the pavement in good repair. It is a loss arising out of the probable diversion of traffic, and hence incidental only. The defendants naturally might anticipate a continuance of the street, and the probability of continuance added value to their land, but their legal right was to have it continued only so long as the city authorities might find it to the public interest. They have lost the advantage which they anticipated, but their anticipation, however reasonable it may have been, is not a property right for which the city ought to compensate unless compensation is required by the statute. The history of the law and the analogy of the cases we have cited lead us to the conclusion that the only damages to land in the view of the legislature were those direct damages which may arise to an owner whose access is completely cut off. Such was the view taken by the New York Court of Appeals in a similar case (*Coster* v. *Mayor of Albany,* 43 *N. Y.* 399), which was subsequently followed in a case which seems quite on all fours with the case at bar. *Fearing* v. *Irwin,* 55 *Id.* 486. A similar result was reached in *Stanwood* v. *Malden,* 157 *Mass.* 17. We have considered the reasons given for a different conclusion in Pennsylvania (*In re Melon St.,* 182 *Pa.* 397), but prefer the views expressed in Massachusetts and New York. In construing a statute it is important to adopt a workable rule and we must assume such was the legislative intention. The act of 1862 authorizes the common council to agree with the owner of the land which will be damaged as to the amount of damages, and in case no agreement is made, provides for the appointment of commissioners to estimate and assess the damages. The legislature could only have had in view such landowners as the common council could see would be damaged. If they meant only those whose access to their land would be cut off, the determination by the common council of those with whom it was bound to treat was a simple matter. If, however, they meant all landowners who might be incidentally damaged, the ascertainment of the persons would be most difficult and in some cases impossible. We can

readily imagine a case where every property owner in Newark might suffer incidental damage by the vacation of a small part of one of its main streets, and in every case the damage must shade off imperceptibly from those whose property is much depreciated through those who suffer less and less up to the vanishing point. It certainly could not have been the intention to impose upon the common council the decision of so nice a question about which men's opinions as to the existence of any damage would inevitably differ. There is nothing in the statute to suggest that there is any limitation to landowners within the same block or to those whose lands are left along a *cul de sac,* and we must adopt the broad and quite impracticable construction that extends the right to all who are damaged, even incidentally, unless we limit it to those who are directly damaged by being deprived of access to their land. We prefer the latter construction. The loss which it entails is no greater than the loss suffered by those who are injured by the lawful operation of a railroad for which no action will lie. *Beseman* v. *Pennsylvania Railroad Co.,* 21 *Vroom* 235, where Chief Justice Beasley vindicated the result by a similar course of reasoning to that adopted by us.

The proceedings, so far as they award damages to Hatt, Brown, Kilburn and Osborne, should be set aside.