REIS v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department.  June 8, 1906.)

1. MUNICIPAL CORPORATIONS—CLOSING STREETS—COMPENSATION.

Under the authority given the board of estimate and apportionment by Greater New York Charter, Laws 1901, p. 199, c. 466, § 442, to close streets, it may close a portion of a street without compensation to the owner of lots which do not abut on the portion of the street closed, where there is other access to the lots of such owner, though not as direct from certain points.

2. SAME—SALE OF CLOSED STREET.

Greater New York Charter, Laws 1901, p. 80, c. 466, § 205, empowering the commissioners of the sinking fund to sell the city title to lands with-

in a discontinued and closed street, provided they determine such lands are not needed for any public use, frees the city of any special trust imposed by section 990 (page 419), providing that the title acquired by the city to lands required for a street shall be in trust that the same be appropriated and kept open for a public street, forever, in like manner as other streets in the city are and of right ought to be.

Appeal from Special Term, Kings County.

Action by Rose Reis against the city of New York and others. From a judgment for plaintiff, defendants appeal. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, and RICH, JJ.

James D. Bell (Richard B. Greenwood, on the brief), for appellants. Alfred E. Sander, for respondent.

JENKS, J. The Legislature could effect the closing of city streets through the board of estimate and apportionment of the city of New York. Fearing v. Irwin, 55 N. Y. 486; Elliott on Roads and Streets, § 875, and authorities cited. The said board was duly authorized and empowered in the premises. Section 442, Greater New York Charter (Laws 1901, p. 199, c. 466). It appears that the board followed the procedure prescribed by that section. Although one public way to property is closed, yet, if another be left, the property owner sustains no actual damage. Fearing v. Irwin, supra; Coster v. Mayor of Albany, 43 N. Y. 399; Egerer v. N. Y. C. & H. R. R. R. Co., 130 N. Y. 108–113, 29 N. E. 95, 14 L. R. A. 381.

The change does not affect physically any lands of the plaintiff. It closes Hawthorne street, which runs east and west between two avenues, Kingston and Albany, which run north and south. The plaintiff does not own any property abutting on the part of the street that is closed, but does possess considerable realty, both east and west of Albany avenue, in blocks bounded in part by Hawthorne street. Her complaint is that the closing of Hawthorne street for this block is to her damage. The practical result is that there is not passage along Hawthorne street between Kingston and Albany avenues. In other words, Hawthorne street is a cul-de-sac at the east side of Kingston avenue and also at the west side of Albany avenue. The court finds that there is no means of access between the lots lying west of Kingston avenue and Albany avenue, except by way of Rutland Road, two blocks to the north, and that as to the lots lying east of Albany avenue there is "no direct means of access" to Nostrand and Rogers avenues. These two avenues—i. e., Nostrand and Rogers—it is to be noted, are six and seven blocks, respectively, to the west beyond Albany avenue, and consequently of the plaintiff's lands, which lie east of Albany avenue. In other words, this closing of Hawthorne street requires a detour to the north of two blocks when one is in Albany avenue, at a point determined by Hawthorne street, and wishes to go to the other side of the block bounded by Albany avenue and Kingston avenue; and if one wishes to travel from Albany avenue through Hawthorne street, so as to reach Hawthorne street on the other side, or avenues beyond, he cannot do so, in a straight line, but must make a detour to the north or south for that block, and vice versa. It is not contended that this is the sole access or that all other access by other streets or thorough-

fares in other directions or from other natural points is disturbed. It seems to me, then, that this case falls within the principles established in Coster v. Mayor of Albany, supra. In that case the court says:

"The plaintiffs further claim that the best approach to their property having been by the Hamilton Street Bridge, and that having been entirely removed by the agents of the state, a damage has resulted to their property for which the city is liable. No part of the bridge was on the property of the plaintiffs. They had no interest or right in it as property. There is left to the plaintiffs an approach to their property by the State Street Bridge, though less near, less easy, less commodious. The damage to the plaintiffs' property from this cause is entirely indirect and remote. It is not claimed to the contrary, and we shall assume that the state had right, by virtue of this act or from other source, to do this work, and in doing it to remove this bridge. The bridge, so far as the plaintiffs were interested in it, was but a part of a public street or highway. Over streets and highways the Legislature has control, and may, when no private interests are involved or invaded, close them, and altogether relinquish their use by the public. People v. Kerr, 27 N. Y. 188–192. And if in the exercise of this right a street be discontinued, and the value of lands abutting on other parts of the street and on neighboring streets is lessened, it is not such an injury to the owner as to entitle him to damages. Smith v. City of Boston, 7 Cush. (Mass.) 254."

And after referring to Smith v. City of Boston, supra, the court quotes therefrom:

"In that case Shaw, C. J., says: 'The damage must be the direct and immediate consequence of the act complained of, and remote and contingent damages are not recoverable. The petitioner has free access to all his lots by public streets. The burden of his complaint is that in going to some of his houses, in some direction, he may be obliged to go farther than he otherwise would. The inconvenience sustained was not such an injury done him in his property as to entitle him to damages.' "

And in Fearing v. Irwin, supra, the court say:

"It is objected, however, that the act is not constitutional, for that it does not provide compensation for those who are deprived of a right of way through the road and the lane. They were public roads; and it is said owners of land adjoining a public road, have a right of property in going to and from their premises over it. This court has held, however, that, though one public way to property is closed, if there is another left, the property owner sustains no actionable damage. Coster v. Mayor, etc., 43 N. Y. 399. It is quite plain, from the diagrams shown, that there is a public way left to all parts of this property. See, also, People v. Kerr, supra."

By the proceedings opening the street, the city became vested with the fee. Section 990, Greater New York Charter (Laws 1901, p. 419, c. 466). When it closed the street, the title and ownership of the fee, subject to any private easements, became vested in the grantor or his heirs if dedicated, or in the city if condemned. Matter of Mayor, 28 App. Div. 151, 52 N. Y. Supp. 588; affirmed 157 N. Y. 409, 52 N. E. 1126. See, too, Kings County Fire Ins. Co. v. Stevens, 101 N. Y. 411–416, 5 N. E. 353. In the latter case the official headnote reads:

"When authorized by the Legislature, the corporation may close a portion of a street, of which it owns the fee, without compensation to owners of lots on the street which do not front upon the portion closed, at least where there is other access to the lots of such owners."

The learned counsel for the respondent contends that there was a special trust imposed, inasmuch as section 990, supra, provides:

"The title acquired by the city of New York to lands and premises required for a street, shall be in trust, that the same be appropriated and kept open for, or as part of a public street, forever, in like manner as the other streets in the city are and of right ought to be."

But, even if a "special trust" existed, the city could be freed therefrom by sanction of the Legislature. Kings County Fire Ins. Co. v. Stevens, supra, citing Brooklyn Park Com. v. Armstrong, 45 N. Y. 234, 6 Am. Rep. 70. Section 205 of the charter provides:

"Said commissioners of the sinking fund shall also have power to sell and convey the right, title and interest of the City in and to lands lying within any street, avenue, road, highway, alley, lane or public place or square that has been discontinued and closed, in whole or in part, by lawful authority, to the owner of lands fronting on such street, avenue, road, highway, alley, lane or public place or square so discontinued and closed, on such terms and conditions and for such consideration as in the judgment of the said commissioners of the sinking fund shall seem proper, provided the said commissioners of the sinking fund shall first determine that the said lands or the part thereof so sold and conveyed are not needed for any public use."

This, I think, is sufficient warrant for the contemplated action of the city, which is in furtherance of public hospital purposes. 20 Am. & Eng. Ency. of Law (2d Ed.) p. 1147.

The judgment must be reversed, and a new trial granted; costs to abide the final award of costs. All concur.