(120 App. Div. 801)

PEOPLE ex rel. WINTHROP v. DELANY, Corp. Counsel.

(Supreme Court, Appellate Division, First Department. July 15, 1907.)

1. MUNICIPAL CORPORATIONS—CLOSING STREETS—LEGISLATIVE POWER.

The Legislature may close streets in New York City and employ the agency of such municipal officials as it shall choose to bring about the closing, or to prescribe the mode of procedure to be adopted for the purpose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 167, 170.]

2. SAME.

Though a city holds land in special trust for street purposes, the Legislature may free the city therefrom.

3. SAME—COMPENSATION FOR LOSS OF EASEMENTS.

Street Closing Act, Laws 1895, p. 2037, c. 1006, providing for the payment of damages caused by closing streets, entitles an abutting owner upon a street 50 feet wide to recover damages caused by narrowing the street to 38 feet in front of his property.

4. SAME—RIGHT TO ENFORCE PROCEEDINGS.

Where it appears that, within the express terms of Street Closing Act, Laws 1895, pp. 2039, 2041, c. 1006, §§ 4, 5, and Laws 1903, p. 1004. c. 425. § 6, a street or part thereof has been discontinued or closed in the manner provided by law by the local authorities, that the owner of property abutting upon such street has within the time limit presented to the comptroller a written statement or claim for compensation and a request that a proceeding be instituted by the appointment of commissioners for the ascertainment and determination thereof, and that such proceedings have not been instituted, mandamus will lie to require the corporation counsel to institute the proceedings, though the strip of land taken is narrow and the damage small.

Appeal from Special Term, New York County.

Motion by the people, on the relation of Henry R. Winthrop, for peremptory mandamus to John J. Delany, corporation counsel of the city of New York. From an order denying the motion, petitioner appeals. Reversed, and motion granted.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and LAMBERT, JJ.

Merle I. St. John, for appellant.

John P. Dunn (Thomas C. Blake, on the brief) and William B. Ellison, Corp. Counsel, for respondent.

CLARKE, J. This is an appeal from an order of the Special Term denying petitioner's motion for the issuance of a peremptory writ of mandamus directing the respondent, as corporation counsel of the city of New York, to institute proceedings under the provisions of chapter 1006, p. 2037, of the Laws of 1895, to ascertain the damages resulting to the premises of the petitioner by the closing of a portion of Depew Place, in the borough of Manhattan, city of New York.

Depew Place was a street 50 feet wide, to the east of the Grand Central Station and running from Forty-Second street north. It was originally acquired and paid for by the New York & Harlem Railroad Company under the provisions of chapter 261, p. 326, of the Laws of 1884, authorizing improvements to the station at Forty-Second street, and requiring the railroad to make a 50-foot street in this location, and providing that, when made, title should vest in the city of New York for street purposes as if it had been laid out on the street map of 1807. The petitioner is the owner of an undivided one-half of the premises on the easterly side of Depew Place, extending from Forty-Second street to Forty-Third street, and having a depth of 75 feet. Incident to the construction of the new terminal, and the changing and enlargement of the Grand Central Station, under the authority and direction of chapter 639, p. 1515, of the Laws of 1904, the city, acting by its proper officers, has discontinued and closed a portion of Depew Place opposite petitioner's premises, commencing at a point 121.83 feet north of Forty-Second street; said strip being 35 feet in length and 12 feet in depth. The petitioner alleges that, as the owner of premises upon the easterly side of Depew Place, he was possessed of the usual easements of light, air, and access over the whole of Depew Place to its full width as it existed prior to the said closing, and that by reason of said closing his premises became greatly depreciated in value. The petitioner is supported by the affidavit of a real estate broker and appraiser, who avers his opinion to be that petitioner's premises have depreciated in value to a considerable extent by reason of the closing of the portion of Depew Place.

The power of the Legislature to enact laws for closing streets in the city of New York is unquestioned, and its authority to employ the agency of such municipal officials as it shall choose to bring about such closing, or to prescribe the mode of procedure to be adopted for that purpose, is equally clear. Fearing v. Irwin, 55 N. Y. 486; Reis v. City of New York, 188 N. Y. 58, 80 N. E. 573. Section 5, c. 425,

p. 1002, of the Laws of 1903, provided that the New York & Harlem
Railroad Company and its lessee, the New York Central & Hudson
River Railroad Company, or either of them, was authorized and em-
powered to acquire from the city of New York, and the city of New
York, acting by the board of estimate and apportionment of said city,
was authorized and empowered in its discretion to grant to said rail-
road corporations, or to either of them, any and all lands, or rights, in-
terests, or easements in lands, in any wise owned, occupied, or con-
trolled by the city of New York within a definite territory.  The said
territory included Depew Place, between Forty-Second street and For-
ty-Third street.   It was further provided that the railroad company
should make a map showing the alterations, changes, and additions in
so far as they should in any manner affect any public streets, avenues,
or places, and that said map should be submitted to the board of esti-
mate and apportionment for its approval.  If such plans and profiles
were approved by the board, evidenced by a resolution, a copy thereof
was to be indorsed upon the plans, one copy of which, so approved,
should be filed with the board of estimate and apportionment, and the
other copy delivered to the New York Central & Hudson River Rail-
road Company, and—.

"upon such plans and profiles or any modifications thereof made as hereinbe-
fore provided, being approved and filed as aforesaid, any and all alterations
or changes in streets, avenues or public places, or in the grade or grades, width
or widths thereof, any and all modifications in or of the use of any existing
street, avenue, highway or public place, or any part thereof, shown upon said
plans or profiles, shall be deemed to have been duly authorized, and the map
or plan of the city of New York shall be deemed to have been changed accord-
ingly without any further act or proceeding by or on the city of New York,
or of any officer, board or department thereof."

Section 4, c. 1006, p. 2039, of the Laws of 1895, provides that:

"Whenever the local authorities shall hereafter make, certify and file a map
or plan showing the streets, avenues, roads, public squares, and places laid out
and established by them as and for the permanent streets, roads, avenues, pub-
lic squares and places of such city, or of any district or section thereof,' * * *
it shall be the duty of the counsel to the corporation * * * to procure a
certified copy of the map or plan so made and filed * * * and also a map,
statement or description of all the streets, roads, highways, alleys, lanes or
thoroughfares, so far as the same can be ascertained which they have not
retained upon such permanent plan, and which they have discontinued and
closed or intended to discontinue and close as aforesaid.  Thereupon it shall be
the duty of the counsel to the corporation * * * to cause application to be
made to the Supreme Court * * * for the appointment of commissioners to
ascertain and determine the compensation which should justly be made to the
respective owners, lessees, parties and persons respectively entitled under or
interested in the lands, tenements, hereditaments and premises, rights, ease-
ments or interests therein taken, affected, damaged, extinguished or destroyed
by such discontinuance and closing."

Section 5 of said act provides that where any map or plan shall be
made and filed—

"discontinuing or closing or intending to discontinue or close any street, avenue,
road, lane, alley or thoroughfare, or any part thereof, theretofore in use or
laid out or established in such city, it shall be the duty of the counsel to the
corporation * * * to take proceedings in the manner specified in this act
to have ascertained and determined the compensation which should justly be

made to the several owners, lessees, parties and persons respectively entitled under or interested in the lands, tenements, hereditaments and premises, or rights or interests therein taken, affected or damaged by such discontinuance or closing, provided however, that within six years after the filing of such map, any owner or owners interested and affected by such discontinuance and closing shall present to the chief financial officer or comptroller of such a city a written statement or claim for compensation and a request that such a proceeding be instituted for the ascertainment and determination thereof."

Section 6, c. 425, p. 1004, of the Laws of 1903, provides that upon the approval by the board of estimate and apportionment of the plans and profiles provided for in that act—

"the proper officers and authorities of such city are hereby authorized and it shall be the duty of such officers and authorities to take such appropriate action as may be necessary or reasonably required to carry the provisions of this act, and any such plans and profiles * * * into effect."

It thus appears that the city was authorized to grant its rights in the portion of Depew Place, here under consideration, and that upon the filing of the map and profiles, duly approved by the board of estimate and apportionment, the map of the city at the locus in quo was permanently altered and changed, and that part of Depew Place was closed as a street. While the act authorized the granting of the city's rights, it did not purport to dispose of any private rights, and, if such rights were property rights, of course, they could not have been disposed of without just compensation. The city owned Depew Place in fee, but it was held in trust for street purposes; but, even if a special trust existed, the city could have been freed therefrom by action of the Legislature. Reis v. Mayor, 113 App. Div. 467, 99 N. Y. Supp. 291. Under the street closing act of 1895, cited supra, a right is given to the owners of property to receive compensation where lands, tenements, hereditaments, and premises, or rights or interests therein, are taken, affected, or damaged by the discontinuance or closing of any street or part thereof. A part of the street upon which the appellant's property abuts has been discontinued and closed. At this particular place his property formerly faced upon a street 50 feet in width. For a strip 35 feet long it has been narrowed to a street 38 feet in width. If, instead of closing a strip 12 feet in width, 45 feet in width had been taken, leaving an alley of but 5 feet in front of the premises, it seems clear that he would be entitled to substantial compensation for the damage received from such discontinuance and closing of so much of the street. "The mere abutter, with no ownership in the bed of the street, is entitled to protection against an interference with certain easements in the street. They constitute property, of which neither Legislature nor municipality can deprive him without just compensation." City of Buffalo v. Pratt, 131 N. Y. 293, 30 N. E. 233, 15 L. R. A. 413, 27 Am. St. Rep. 592.

The moment it is conceded that for such deprivation of the street as existing the property owner would be entitled to have proceedings instituted to ascertain the compensation to which he was entitled, it seems clear that he is in a position to ask the aid of the court to compel the corporation counsel to perform the duty imposed upon him by law of instituting the necessary proceedings to obtain the necessary

appointment of the commissioners. It is no answer that the strip taken is narrow and the damage inflicted small. The question of the amount of damage and the compensation therefor is to be determined in the first instance by the commissioners to be appointed and not by the court. All that is necessary to establish to the satisfaction of the court is that a street or a part thereof has been discontinued or closed in the manner provided by law by the local authorities; that the property abuts upon such street so discontinued or closed; that the owner has, within the time limited, presented to the comptroller a written statement or claim for compensation, and a request that a proceeding be instituted by the appointment of commissioners for the ascertainment and determination thereof; and that such proceedings have not been instituted. The petition in the matter at bar sets forth all those facts.

It follows, therefore, that the order appealed from should be reversed, with $10 costs and disbursements, and that the motion should be granted, with $10 costs. All concur.

---

(120 App. Div. 849.)

In re WATER FRONT ON NORTH RIVER IN CITY OF NEW YORK.

CONSOLIDATED GAS CO. OF NEW YORK v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 15, 1907.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—DEPRIVATION OF PROPERTY—EMINENT DOMAIN.

Greater New York Charter, Laws 1901, p. 351, c. 466, § 822, authorizing the acquisition for the benefit of the city of wharf property and lands under water as shall be necessary for the improvement of a water front, and providing that in awarding compensation for the taking of land the value of the entire premises shall be ascertained and then the value of the premises in the condition they will be after the part is taken and the difference shall be the measure of compensation, construed to authorize commissioners of estimate and assessment, in estimating compensation for property sought to be taken, to consider the special benefits resulting to the portion of land not taken, is not violative of the fourteenth amendment to the federal Constitution, though an owner of a parcel which is entirely taken will receive full compensation.

2. EMINENT DOMAIN—CONDEMNATION OF LAND—DAMAGES.

Greater New York Charter, Laws 1901, p. 351, c. 466, § 822, authorizes the acquisition by the city of land under water for improving the water front of a river, and provides that if the property of the riparian owner has been built on or improved, and part only of the property is taken, the just value of the entire premises shall first be ascertained, and then there shall be ascertained the value of the premises in the condition in which they will be after the part is taken, and the difference shall constitute the measure of compensation. The city sought to acquire lands originally under water for improving the water front of a river. It sought to acquire a part of a tract on which there were improvements. It also sought to acquire a part of a parcel originally under water, which would be brought to grade on an established street on the completion of the proposed improvement. *Held*, that the statute was applicable to both parcels, and special benefits resulting to the parcels not taken were properly deducted in estimating the compensation to be awarded for the land taken.

3. SAME.

In a proceeding by a city to condemn land for a public improvement it appeared that by taking the land a gas company having a gasholder there-