the owner could not be deprived of it without compensation.  In the Livingston Case it was held that chapter 742 of the Laws of 1900, which amended section 1759 of the Code of Civil Procedure by authorizing the court at any time after the entry of a final judgment of divorce in favor of a wife to annul, vary, or modify the provisions of the judgment with respect to the payment of alimony, was unconstitutional, in so far as it applied to a judgment entered prior to the time the amendment took effect.

The act in question is unconstitutional because it deprives the defendant of a beneficial interest in property without due process of law.  As soon as the trust estate was created, the defendant became entitled to the income derived therefrom.  This was a fixed, settled, and vested interest, a property right which the Legislature could not take from him and of which he could be deprived only by due process of law.  The right to the payment of alimony under a judgment recovered prior to the passage of a statute is no greater or more secure than the right to the payment of income derived from a trust fund. If the right is vested in one case, it must also be vested in the other, and if one is beyond legislative attack, then it seems to me the other is. To hold that the statute applies to trusts created prior to September 1, 1908, is to diminish the income to the extent of 10 per cent., which the testator intended for his son, and, if this can be legally done, then the Legislature has the power, as we have already seen, to deprive the son of the whole sum.  Metcalfe v. Union Trust Co., 181 N. Y. 39, 73 N. E. 498.  At the time the trust in question was created the Revised Statutes permitted, to a certain extent, income from trust funds to be reached by creditors (Williams v. Thorn, 70 N. Y. 270; Tolles v. Wood, 99 N. Y. 616, 1 N. E. 251), and to this provision the trust, as created by the testator, was at all times subject.  The income cannot be reached in any other way until it has actually been paid to the defendant.  The case of Kittel v. Domeyer, 175 N. Y. 205, 67 N. E. 433, is not in point, nor does the principle there laid down have any application to the question here presented.

The order appealed from therefore should be affirmed.

INGRAHAM, P. J., concurs with McLAUGHLIN, J.

---

In re GROTE ST. IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.  June 10, 1910.)

MUNICIPAL CORPORATIONS (§ 404*)—CLOSING STREETS—DAMAGES TO PROPERTY OWNERS—CLAIMS—TIME.

Laws 1895, c. 1006, § 5, provides for the assessment of damages to property owners suffered by reason of the closing of streets, and declares that if the claimant does not present a written statement or claim for compensation within six years after filing of a map closing a street he shall be forever barred from claiming compensation therefor.  *Held*, that, where claimant failed to file a claim for compensation by reason of the closing of a street within the time specified, her right to compensation was barred, though some time after the street was closed she conveyed the

property to another, who filed claim within the statutory period, not in her right, but in antagonism to her; she not being entitled to any rights under claims so filed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 991; Dec. Dig. § 404.*]

Appeal from Special Term, New York County.

In the matter of the improvement of Grote Street in the City of New York. From an order denying the motion of Margaret M. Gleason that commissioners of estimate and assessment be directed to fix compensation for damages sustained by her by the closing of the Kingsbridge Road from Prospect Avenue to Southern Boulevard, she appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, SCOTT, DOWLING, and MILLER, JJ.

Merle I. St. John, for appellant.

Joel J. Squier, for respondent City of New York.

Clarence C. Ferris, for respondent Hookey.

Joseph A. Flannery, for respondents Dowd and others.

SCOTT, J. This is an appeal by Margaret M. Gleason from an order denying her motion that the commissioners of estimate and assessment appointed in this proceeding be authorized to ascertain and determine the compensation which should be made to her by reason of the discontinuance and closing of Kingsbridge Road between Prospect Avenue and Southern Boulevard.

It appears that on November 2, 1895, the commissioner of street improvement of the Twenty-Third and Twenty-Fourth wards of the city of New York caused to be filed certain legally adopted and approved maps showing the lines and grades of streets and avenues, which maps were thereafter in all respects ratified, confirmed, and approved by chapter 712 of the Laws of 1896. Upon these maps Kingsbridge Road, from Prospect Avenue to Southern Boulevard, was shown as discontinued. The Southern Boulevard, an old and traveled street, was continued. On said November 2, 1895, the appellant was the owner of a piece or parcel of land fronting on said Kingsbridge Road. Being the owner of the lot at the time the street was legally closed, she was entitled to such damage as might result to her property in consequence of such closing, providing she took the necessary steps to assert her claim. This she failed to do.

Section 5, c. 1006, Laws 1895, providing for the ascertainment of damages suffered by reason of the closing of streets, requires that a person claiming to have been damaged must within six years after the filing of a map closing a street present to the chief financial officer or comptroller of the city a written statement or claim for compensation, failing which he is "forever barred from claiming compensation for such closing or discontinuance." The appellant did not file such a claim within six years, and is therefore barred to now claim compensation. Matter of the Mayor, etc., Walton Ave., 131 App. Div. 714, 116 N. Y. Supp. 471, affirmed 90 N. E. 59. Some time after the closing of the street appellant conveyed the property to one Dowd, and he, or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

those claiming under him, did file claims within the statutory period. The appellant, however, cannot take any advantage from these claims, for they were not asserted in her right, but in antagonism to any claim by her. Nor can she now claim to ratify them, and thus gain an advantage from them, because those who filed them did not do so as her agents or in her behalf. It is not apparent how any one claiming under appellant by a deed subsequent to the closing of the street can successfully assert a claim to damages done to the property while in appellant's ownership; but that question, although argued on some of the briefs, is not involved in this appeal.

Order affirmed, with $10 costs and disbursements to the respondent the city of New York. All concur.

---

## P. H. GILL & SONS FORGE & MACHINE WORKS v. DETROIT-CADILLAC MOTOR CAR CO.

(Supreme Court, Appellate Division, Second Department.   June 10, 1910.)

BAILMENT (§ 14*)—CARE OF PROPERTY—NEGLIGENCE.

> A bailee receiving a crank shaft to test and straighten is not liable for injuring the same while attempting to straighten it, unless he fails to employ ordinary care and skill required in such work.
>
> [Ed. Note.—For other cases, see Bailment, Cent. Dig. § 49; Dec. Dig. § 14.*]

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by the P. H. Gill & Sons Forge & Machine Works against the Detroit-Cadillac Motor Car Company. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before WOODWARD, JENKS, BURR, RICH, and CARR, JJ.

James Crooke McLeer, for appellant.

JENKS, J. Plaintiff, as bailee, received defendant's motor car crank shaft to test it or to straighten it, and during the work, or thereafter, cracks or seams appeared in the shaft. The defendant was notified. Thereupon a new crank shaft, ordered by defendant, was made and delivered by plaintiff. Defendant stopped the check which he had sent to plaintiff in payment for this shaft. In this action, brought to recover upon the check, defendant counterclaimed, and the court awarded to it damages for the value of the first crank shaft, and for the loss in the matter of the extra time and labor required for assembling the parts to fit the new crank shaft. As these damages are in excess of plaintiff's claim, defendant gains the judgment.

Even though it were proved to the satisfaction of the court that the crank shaft was cracked by the plaintiff "in the attempt to straighten the bend or kink found in it," that fact alone cannot support the judgment; for the judgment must rest upon proof that satisfied the court that plaintiff was negligent. The experts called by the defendant were asked what was the best or the very best way to do the work.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes