## In re WEST 151st ST. IN CITY OF NEW YORK.

(Supreme .Court, Appellate Division, First Department.    February 9, 1912.)

1. MUNICIPAL ·CORPORATIONS (§ 402*)—CLOSING OF STREETS—DAMAGES—EVIDENCE.
.Where, in proceedings to determine the damages to a parcel of land under water, caused by the closing of an abutting street, the evidence of the value of the parcel and of the damages caused by the closing of the street was conflicting, but no theory was presented by witnesses on which it could be determined with any certainty what the value of the property was before the street was discontinued, or what its value was with the street closed, but the evidence showed that the parcel might be utilized as river front property, accessible from the river, and that the parcel abutted on an avenue, the title to which had been acquired by the city, but which had not been improved, and, being under water, afforded no present access to the property, the personal view of the commissioners of estimate and assessment, in awarding damages, must be given great weight by the courts.
[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 402.*]

2. MUNICIPAL CORPORATIONS (§ 402*)—DISCONTINUANCE OF STREETS—DAMAGES—ISSUES.
The commissioners of estimate and assessment, appointed, in proceedings under Laws 1895, c. 1006, to determine the damages for the closing of a street, have jurisdiction to determine title to land claimed by a petitioner for damages.
[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 402.*]

3. DEEDS (§ 138*)—ESTATES CONVEYED—RESERVATION.
A city, having a patent to submerged lands, conveyed land under water between the center lines of designated streets extending into a river, reserving for public streets so much of the land as ·by a map annexed formed part of the designated streets and an avenue specified at right angles to such streets. A parcel was situated wholly. within .the lines of the avenue, as shown on the map.  Held, that the land within the exterior lines of the avenue and the streets shown on the map were excepted from the grant, and the title thereto remained in the city.
[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 138.*]

4. DEEDS· (§ 143*)—TITLE TO REAL ESTATE IN FEE—STATUTES.
A city's title in fee reserved in a grant by it of lands patented to it is unaffected by Laws 1867, c. 697, authorizing a change of the location of a street, and· providing that the abutting owners shall become seised in˜fee to the center line of the old street.
[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 143.*]

5. ADVERSE POSSESSION (§ 14*)—ACTS CONSTITUTING—EVIDENCE.
A person claiming title to land by adverse possession showed that his. predecessor in title, in 1868, built a railroad station, and that until 1899 the actual occupancy was by a railroad company in using the station under a claim in its own right.  In 1899 the railroad took a lease from the claimant's father, but there was no inclosure or cultivation of the premises.  Taxes were paid on the land subsequent to 1873 by the claimant's. father, and after the father's death in 1900 by claimant.  Held not to establish title by adverse possession.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 77–81; Dec. Dig. § 14.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

6. EMINENT DOMAIN (§ 243*)—EFFECT OF JUDGMENT IN PRIOR PROCEEDING.
    Under Laws 1897, c. 665, authorizing the acquisition of land for a
    public drive in the city of New York, damages for parcels, no part of
    which was acquired, being unauthorized, failure to obtain compensation
    therein will not preclude award to an owner in another proceeding for
    cutting off the only remaining access to his property.
        [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 627–
    629; Dec. Dig. § 243.*]

7. MUNICIPAL CORPORATIONS (§ 398*)—CLOSING STREETS—DAMAGES—PERSONS
    ETITLED TO.
    Though a city may not physically close a street until compensation to
    abutting owners has been made, yet, to determine the persons entitled
    to damages, the street is deemed closed when the statutory steps have
    been taken, for then the right to damages accrues, and an owner of abut-
    ting property at that time is entitled to damages, notwithstanding a sub-
    sequent conveyance made subject to proceedings then pending or there-
    after brought relative to the closing of streets.
        [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
    398.*]

8. MUNICIPAL CORPORATIONS (§ 392*)—CLOSING OF STREETS—DAMAGES—STAT-
    UTES.
    Laws 1895, c. 1006, § 6, requiring the commissioners of estimate and
    assessment to make an estimate of the compensation to the respective
    owners damaged by the discontinuance of any street, etc., embraces a
    claim for damages to land not abutting on a street sought to be closed,
    but which will be wholly cut off from access on the closing of the street,
    though ordinarily the right to damages depends on the claimant being
    an abutting owner on the part of the street discontinued.
        [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
    936; Dec. Dig. § 392.*]

    Clarke, J., dissenting in part.

Appeal from Special Term, New York County.
    Application by the City of New York, by the Corporation Counsel,
for the appointment of Commissioners of Estimate and Assessment
to ascertain the damages from the discontinuance of West One Hun-
dred and Fifty-First Street, from the easterly side of Riverside Drive
Extension to the United States Bulkhead Line, Hudson River, in the
Twelfth Ward, Borough of Manhattan, City of New York. From
an order confirming the supplemental and amended report of the
Commissioners of Estimate and Assessment, Jessie Gillender and
Francis Higgins separately appeal. Affirmed in part; reversed and
matter referred back in part.
    See, also, 132 App. Div. 867, 117 N. Y. Supp. 841; 123 N. Y.
Supp. 343.
    Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and MILLER, JJ.

    Charles De Hart Brower, for appellant Gillender.
    James A. Deering, for appellant Higgins.
    L. Howell La Motte, for respondent City of New York.

    LAUGHLIN, J. This is a proceeding instituted by the city of New
York for the appointment of commissioners to ascertain and deter-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mine the damages caused by the closing of West 151st street, west of the easterly line of Riverside Drive Extension, excepting that part of said street which is included within the limits of Twelfth avenue at its intersection with said avenue.

[1] The appellant Gillender is the owner of damage parcel No. 3, which abuts on the northerly side of the discontinued street, west of Twelfth avenue, and she has been awarded $17,760.71 therefor. She contends that the award is inadequate. The entire parcel is under water, and is unimproved, with the exception that a frame building stands partly thereon and partly on Twelfth avenue, and a narrow dock or pier extends partly along the easterly boundary of the parcel. It does not definitely appear what income she has been deriving therefrom, although it does appear that she received about $2,-000 for the use of this dock and building and a station on parcel No. 4 and the use of the water front one year. The evidence with respect to the value of the parcel and to the damage caused thereto by closing the street is conflicting; and no theory is presented by the witnesses called by the city or by the owner, upon which it can be determined with any degree of certainty what the value of the property was before the street was discontinued, or what its value is with the street closed. It may still be utilized as river front property accessible from the river, but the only present access to it has been cut off by discontinuing the street. It still, however, abuts on Twelfth avenue, the title to which has been acquired by the city, but which has not been improved and is under water and at present affords no access to the property.

Under the grant by which the predecessor in title of appellant Gillender acquired title to this land under water from the city, the grantee and his successors were obligated on three months notice from the city to construct bulkheads, wharves, streets, and avenues in the streets and avenues adjacent thereto and to improve them for said purposes and maintain them at their own expense, as required by the city, which obligation they have not yet been called upon to perform; but doubtless her obligation would not now extend to Twelfth avenue as changed in so far as the same was newly acquired. The case is one in which the personal view of the commissioners must be given great weight, and there is no basis presented by the evidence upon which the court would be justified in reversing the determination of the commissioners, with respect to the amount of the damages.

[2] The appellant Gillender also claims to be the owner of damage parcel No. 4; but the commissioners have found that title to this parcel is in the city, and have made no award therefor. The learned counsel for the appellant contends that the commissioners were not authorized to determine the ownership of the parcel. This contention is based on the decisions which hold that, where an eminent domain proceeding is instituted to acquire title to property, the party instituting the proceeding cannot claim that it already has the title or easement which it seeks to condemn. Matter of City of Yonkers, 117 N. Y. 564, 23 N. E. 661; City of Geneva v. Henson, 195 N. Y.

447, 88 N. E. 1104; In re Village of Olean v. Steyner, 135 N. Y. 341, 32 N. E. 9, 17 L. R. A. 640. We are of opinion that those authorities are not applicable here, and that the commissioners had jurisdiction to determine the question of title. This proceeding was not instituted to acquire land, but to determine the damages caused by closing the street. The proceeding was instituted by the city pursuant to the provisions of section 4 of chapter 1006 of the Laws of 1895 for the appointment of commissioners to ascertain and determine the compensation which should justly be made to the owners, lessees, and parties entitled to or interested in the lands, tenements, hereditaments, and premises, rights, easements, or interests therein, taken, affected, damaged, extinguished, or destroyed by the discontinuance or closing of the street. No one was specifically made a party to the proceeding by the city; but, pursuant to the requirements of the statute, the commissioners gave notice of their appointment by publishing the same in the City Record, and required all parties interested to present their claims, specifying the time when they would be afforded a hearing. The appellant Gillender thereafter filed a petition with the commissioners claiming that she owned certain premises, without describing them, which were damaged by the closing and discontinuance of the street, and praying that a just and adequate award be made therefor to her. It may be, as claimed, that the proceeding was instituted in consequence of the injunction she had obtained; but that is not material, for she could have compelled the city to institute it. She came into the proceeding pursuant to this petition, and thereafter claimed title to both of the parcels now known as damage parcels Nos. 3 and 4, and gave evidence which she contends shows her title and her damages. The city also gave evidence tending to show title in it to parcel No. 4. In the year 1837 one Carman acquired title to the upland extending from the Hudson river between the center line of 151st street and the center line of 153d street easterly to Kingsbridge Road.

[3] Damage parcel No. 4 lies below and to the west of the original high-water line of the Hudson river and was submerged at this time. It, together with other land under water along this part of the river, was granted to the mayor, aldermen, and commonalty of the city of New York in the year 1826 by letters patent. On the 30th day of December, 1852, the city conveyed to Carman the land under water between the center lines of 151st street and 153d street, extending into the river, and the lands thus conveyed were bounded on the east by the original high-water line, and on the west by a line parallel with Twelfth avenue, as shown on a map annexed to the conveyance, and 450 feet westerly therefrom. This deed from the city to Carman contained the following clause:

"Saving and reserving from out of the hereby granted premises so much thereof as by said map annexed forms part or portions of the Twelfth avenue, One Hundred and Fifty-First, One Hundred and Fifty-Second and One Hundred and Fifty-Third streets for uses and purposes of public streets, avenues and highways as hereinafter mentioned."

The map annexed to the conveyance shows Twelfth avenue at right angles to these streets, and that the high-water line ran diagon-

ally across Twelfth avenue between 151st and 153d streets, leaving part of Twelfth avenue between these points on either side of it. Damage parcel No. 4 lies wholly within the lines of Twelfth avenue, as shown on this map, and wholly west of the original high-water line. We are of opinion that the land within the lines of Twelfth avenue and the streets shown on the map were excepted from the grant, and that the title thereto remained in the city. Langdon v. Mayor, etc., 93 N. Y. 129, 149; Consolidated Ice Co. v. Mayor, etc., 53 App. Div. 260, 65 N. Y. Supp. 912, affirmed 166 N. Y. 92, 99, 59 N. E. 713.

[4] In the year 1869, the Commissioners of Central Park, pursuant to the provisions of chapter 697 of the Laws of 1867, changed the location of Twelfth avenue at the point in question, leaving the avenue abandoned as to this parcel No. 4, which was left bounding on the easterly line of Twelfth avenue, as changed and lying between Twelfth avenue as changed and the westerly boundary of the railroad right of way. Section 3 of chapter 697 of the Laws of 1867, under which the location of Twelfth avenue was changed, contained, among other things, a provision as follows:

"The abutting owners on such of said streets, avenues and roads as have been opened or ceded, and as shall be abandoned or closed under the provisions of this act, shall become and be seised in fee simple absolute therein to the centre line thereof in front of his or their lands respectively."

The appellant Gillender contends that, by virtue of this provision of the statute, her predecessor in title became the owner in fee simple of this parcel. The right of way of the railroad, which had been acquired at that time, was between this parcel and the lands of her predecessor in title on the east, and other lands of her predecessor in title abutted on the old westerly line of Twelfth avenue, and touched the parcel in question at its extreme northwesterly corner. In other words, this parcel lay diagonally well within the lines of old Twelfth avenue, leaving land upon either side of it between it and the exterior lines of the avenue, except at the northwesterly corner, as stated. The part of this land belonging to the appellant's predecessor in title, which touched this parcel in the manner indicated, was, however, acquired by the city and included within the new lines of Twelfth avenue in the proceeding to change the location of Twelfth avenue. We do not deem it necessary to consider the arguments pro and con with respect to whether the appellant's predecessor in title was an abutting owner who could take under the statute a part of the discontinued avenue, for, as has been seen, the fee to this parcel remained in the city, and the mere act of the Legislature could not divest the city of its title. Consolidated Ice Co. v. Mayor, etc., supra.

[5] The appellant Gillender claims in a way, without making a special point of it, that she has title to this parcel by adverse possession. The basis for this claim is evidence that in the year 1868 Carman was in possession of the property and built a small railroad station, known as the Carmansville Depot, for the use of the people in that vicinity, and a ramp or roadway, and a bridge to give access

from easterly of the railroad through 151st street to the station, and that the station building has remained there and has been used both as a railroad station, and, after its use as such was discontinued by the railroad, for dwelling house purposes ever since, and that the railroad company recognized appellant's father's claim to ownership in the year 1899, by taking a lease of the parcel in question from him and paying him rent therefor; but down to that date the only evidence of actual occupancy or possession was by the railroad company in using this way and station under a claim in its own right, and there was no inclosing or cultivating. Taxes have been paid on the parcel since 1873 by appellant's father, and after his death in 1900 by appellant; but it is not claimed that this is evidence of possession by either of them, and manifestly it is not. This evidence is wholly inadequate to establish title in the appellant by adverse possession. The commissioners, therefore, did not err in declining to make an award to appellant for this parcel.

[6] Appellant Higgins owns the premises, known in the record as damage parcels Nos. 1 and 2, which lie between 152d and 153d streets and bound on both streets. Damage parcel No. 1 is bounded on the east by the westerly line of Twelfth avenue, as changed, and damage parcel No. 2 is bounded on the west by the easterly line of Twelfth avenue, as changed. Both parcels are wholly west of the original high-water line, and parcel No. 1 is wholly under water now, while parcel No. 2 is at present upland. Twelfth avenue at this point has not been improved and, as already stated, cannot be used in its present condition, for it is partly under water. West 152d and 153d streets, as well as Twelfth avenue, prior to the times in question had been acquired by the city in fee for the purposes of public streets; but none of them had been improved or opened or used as public streets in the vicinity in question, and they were and are inaccessible on account of the irregular surface and steep grade rising to the east. Although no formal proceedings to discontinue any parts of West 152d and 153d streets have been taken by the city, they have been effectually cut off between these parcels owned by the appellant Higgins and Broadway by the proceedings for opening and improving Riverside Drive Extension. The lands acquired for Riverside Drive Extension abutted on the railroad right of way on the east, and the driveway proper at this point crosses 152d and 153d streets on an embankment, the surface of the driveway being about 70 feet above the high-water line, and no opening has been left for either of these streets, and these parcels are left without any possible access to the city through either 152d or 153d streets. The lands acquired for the extension of Riverside Drive were acquired and the improvement was made pursuant to the provisions of chapter 665 of the Laws of 1897. Title to such lands vested in the city on the 22d day of September, 1900. The report of the commissioners of estimate and assessment appointed in that proceeding was confirmed on the 17th day of April, 1903. The map, under which the necessary lands were acquired, was accompanied by a profile made by the engineer of street openings, and it showed the profile of the improve-

ment to be made, and that 152d and 153d streets were to be cut off thereby, but that 151st street was to be left open, passing under the driveway through an archway. On the 7th day of July, 1905, the board of estimate and apportionment, acting under the authority conferred by section 442 of the Greater New York Charter (Laws 1901, c. 466), adopted a resolution discontinuing 151st street from the easterly line of the Riverside Drive Extension to the United States Bulkhead Line in the Hudson river, and this resolution was approved by the mayor and became effective on the 12th day of the same month. By the Riverside Drive Extension proceedings, the city acquired title to a parcel or part of a parcel of land owned by the appellant Higgins abutting on easterly line of the railroad right of way, but did not take any part of either of the parcels in question in this proceeding.

It is contended by counsel for the city that appellant Higgins should have obtained his damages in that proceeding, and that he is deemed to have obtained them therein. No provision of the statute is cited, and we find none, indicating a legislative intent that the condemnation commissioners were authorized to award damages for parcels no part of which was acquired by the city, and by the provisions of section 3 of the act the proceedings under it appear to have been confined to the land acquired. No claim is made that the appellant Higgins had a remedy under the provisions of chapter 1006 of the Laws of 1895 to recover damages on account of West 152d and West 153d streets having been thus cut off by the construction of Riverside Drive, and, if he had, he would doubtless have been confronted with the fact that his lands were still accessible through Twelfth avenue and West 151st street, and, never having been accessible through the other streets, he could not have recovered all of his damages. Counsel for appellant Higgins contends that his client could not have obtained damages in that proceeding for cutting off access to these parcels through 152d and 153d streets, and that if he could it is immaterial for, since these streets were not accessible, he could not have proved more than nominal damages, and particularly as the plan of improvement showed that 151st street was to be left open, which would afford access to these parcels and the only access they had ever had; and he does not seek to recover here any damages caused to these parcels by cutting off or closing 152d or 153d streets.

After the railroad was built, and at a time not definitely shown, but between 1853 and 1858, Carman, who was also the predecessor in title of the appellant Higgins and owned considerable land on the water front westerly of the railroad right of way in that vicinity, constructed a roadway from Kingsbridge Road down 151st street to Twelfth avenue, passing over the railroad tracks by a bridge and then northerly by a ramp along and within the lines of Twelfth avenue, as changed, to about 152d street, affording access to the railroad station, to which reference has been made, and to the water front at the foot of West 152d street, where Carman had filled in the land under water and constructed a wharf or dock, upon which lumber and coal were landed. The lumber was carted via this roadway to

Carman's lumber yard on Tenth avenue, and the coal was carted by the same route to a coalyard at 151st street and Tenth avenue, until 1873, when the dock or wharf was leased by the appellant's predecessor in title for coalyard purposes, and was so used for a period of about six years. On the 19th day of April, 1876, the city acquired title to the land within the lines of 151st street, although, as has been seen, it had been laid out on paper and used to a considerable extent for a long period prior to that time. The Riverside Drive Extension improvement left 158th street open to the north of these parcels, and 145th street to the south, but cut off all streets between them excepting 151st street, which was subsequently cut off by the proceedings for the discontinuance of part of West 151st street, and the grade of the streets, so cut off, easterly of the driveway, was made to conform therewith, and thus the streets were connected with the driveway; but the westerly side of the driveway across these streets was and is a high wall of masonry.

[7] The appellant Higgins sold and conveyed these parcels to the Guaranty Trust Company on the 28th day of December, 1906, and the city contends at the outset that he is not entitled to an award in any event. We are of opinion that this contention is not tenable. Although we held, in an action by the appellant Gillender to enjoin the improvement until her easements were acquired, that the city should not be permitted to physically close the street until compensation was made (Gillender v. City of New York, 127 App. Div. 612. 111 N. Y. Supp. 1051), yet the rule is that, for the purpose of determining who are entitled to the award for damages, the street is deemed legally closed, not at the time the award for damages is made, but at the time that the essential statutory steps have been taken, and that the right to damages then accrues (Matter of Mayor, etc. [Walton Ave.] 131 App. Div. 696, 116 N. Y. Supp. 471, affirmed 197 N. Y. 518, 90 N. E. 59; Matter of City of New York [West 151st Street] 132 App. Div. 867, 117 N. Y. Supp. 841; Matter of Richard Street, 138 App. Div. 821, 123 N. Y. Supp. 438; Matter of Mayor, etc., of New York [Grote Street] 139 App. Div. 69, 123 N. Y. Supp. 619; Matter of Mayor, 28 App. Div. 143, 52 N. Y. Supp. 588; King et al., v. Mayor, etc., et al., 102 N. Y. 172, 6 N. E. 395). Moreover, the conveyance from appellant Higgins to the Guaranty Trust Company was expressly made subject to any proceedings then pending or thereafter brought relative to "establishing, altering, or amending bulkhead and pier lines or laying out, closing, changing, amending, opening, or otherwise" Twelfth avenue, 151st, 152d, and 153d streets, "or any other streets or avenues in the local district of improvement in which said premises are situated," and the Guaranty Trust Company has made no claim to the award. There can be no doubt on these facts that the premises of the appellant Higgins have been damaged by the discontinuance of this street, and that he sustained substantial damages thereby is rendered probable by the fact that the commissioners originally appointed made him an award of $35,700 therefor, which was vacated by the court upon the theory that, not being an abutting owner on the part of 151st street

discontinued, he was not entitled to any damages, which ruling controlled the action of the commissioners on the last hearing.

[8] The question is therefore necessarily presented for decision as to whether, by virtue of the provisions of section 6 of chapter 1006 of the Laws of 1895, the commissioners had jurisdiction to award damages to appellant Higgins on these parcels. The provisions of that section, so far as material to the question, are as follows:

"They (the commissioners) * * * shall proceed to make a just and true estimate of the compensation which should justly be made for any loss and damage to the respective owners, lessees, parties and persons respectively entitled in possession, reversion, remainder unto or interested in any land, tenements, hereditaments or premises, easements, rights, or interests taken, affected, damaged, extinguished or destroyed by or in consequence of the discontinuance or closing of any street, avenue, road, highway, alley, lane or thoroughfare, or any part of any street, avenue, road, highway, alley, lane or thoroughfare, described in said petition, * * * and to report thereon to said Supreme Court without unnecessary delay. In the said report * * * in each and every case and cases when the owners and parties interested or their respective estates and interests are unknown or not fully known to the said commissioners, it shall be sufficient for them to estimate and to set forth and state in their said report in general terms, the respective sums to be allowed and paid to the owners and proprietors generally of such said lands, tenements, hereditaments and premises for the loss and damage to such owners, proprietors and parties interested in respect to the whole estate and interest of whomsoever may be entitled unto or interested in the same, by and in consequence of such discontinuance or closing."

This court, on an appeal by the appellant Gillender from an order amending this proceeding so as to discontinue it as to that part of the street westerly of the railroad company's right of way, which would deprive the appellant Gillender of her rights as an abutting owner on the part of the street discontinued, and leave it a lawful street in front of her property, intimated that the result of the amendment might be to deprive her of all claim to damages. Matter of City of New York (West 151st Street) supra. But the question was not presented for decision on that appeal. These facts present an unusual situation, for the property of the appellant Higgins is peculiarly situated and at present wholly dependent upon 151st street for access. Ordinarily the right to damages under the statute in question, and under similar statutes, depends upon the claimant being an abutting owner on the part of the street discontinued; but the language of the statute is very broad and may, I think, be reasonably construed to embrace the claim of the appellant Higgins. If the property in question had other means of access, then, not being an abutting owner on the street discontinued, he would have no standing in this proceeding; but this property is left, not with less convenient access, but entirely without present access or the prospect of access in the immediate future, and this has been held in many cases to be an important, if not a controlling, consideration in the construction of analogous statutes, to sustain their constitutionality. Fearing et al. v. Irwin et al., 55 N. Y. 486; Coster v. Mayor, 43 N. Y. 399; Kings County Fire Ins. Co. v. Stevens, 101 N. Y. 411, 5 N. E. 353; Egerer v. N. Y. C. & H. R. R. Co., 130 N. Y. 108, 113, 29 N. E. 95, 14 L. R. A. 381; Reis v. City of New York, 188 N. Y. 58, 80 N. E. 573.

It is contended that the Court of Appeals has decided this question adversely to the claim of the appellant Higgins. The city relies principally upon Reis v. City of New York, supra, and People ex rel. Winthrop v. Delany, 120 App. Div. 801, 105 N. Y. Supp. 746, modified 192 N. Y. 533, 84 N. E. 1118, as construing the statute in question. I am of opinion that they are not decisive of the question now before the court. In the case of People ex rel. Delany, supra, a motion for a writ of mandamus had been granted directing the corporation counsel to institute proceedings, pursuant to the provisions of chapter 1006 of the Laws of 1895, to ascertain the damages sustained by the petitioner and by other property owners abutting on the street within the block within which part of it only was discontinued on one side of the street, leaving the street for its entire length still open for travel, but merely contracting its width to the extent of 12 feet through part of the block. The Court of Appeals, without opinion, modified the order. granting the application for mandamus by confining the proceeding to ascertaining and determining the petitioner's damages. The discontinuance and closing of this strip was incident to the construction of the new terminal and the changing and enlargement of the Grand Central Station, and the petitioner was the only property owner abutting on the street opposite the discontinued part. Whether the modification by the Court of Appeals was upon the theory that the other parties had not applied to the court to have their damages ascertained and determined, or on the theory that they did not abut on that part of the street discontinued, is a matter of speculation, and I think it more probable that it was intended to leave them at liberty to assert or abandon their rights, instead of adjudicating that they had rights which they were not before the court asserting. The Reis Case, supra, is not controlling for the reason that there the street was discontinued as to one block, and on both sides of the discontinued part of the street the city was the owner of the abutting land. An action for an injunction was brought by the owner of property on both sides of the discontinued street, in the next blocks on either side of the discontinued part, to restrain the erection by the city of a hospital building on the discontinued portion of the street, and, since his property had access by other streets, it was held that he had no easement in this particular block which entitled him to an injunction.

The phraseology of this statute does not indicate that the Legislature merely intended thereby to provide a means of ascertaining and determining damages for which the municipality would be liable without the statute, and there is ample authority for a construction which will extend its provisions to embrace the lands of the appellant which are wholly cut off from present access. Bank of Auburn v. Roberts, 44 N. Y. 192; Metropolitan Board of Works v. McCarthy, L. R. 7 H. L. Eng. & Ir. App. Cases, 243; Putnam v. Boston & P. R. R. Co., 182 Mass. 351, 65 N. E. 790; Mellor v. Philadelphia, 160 Pa. 614, 28 Atl. 991; In re Melon Street, 182 Pa. 397, 38 Atl. 482, 38 L. R. A. 275; Chicago v. Taylor, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638; Jones on Easements, § 550; Lewis on Eminent Domain (3d Ed.) § 204.

It follows that the order should be affirmed with costs as to the appellant Gillender, and reversed with costs as to the appellant Higgins, and the matter referred back to the commissioners to make an award in accordance with the views herein expressed.

INGRAHAM, P. J., and SCOTT and MILLER, JJ., concur.

CLARKE, J.    I dissent from so much of this opinion as upholds the right of the Higgins property to an award.