In the Matter of the Application of WALTER WINCHESTER COX and Others, Petitioners, for a Mandamus Order against THE BOARD OF ESTIMATE AND APPORTIONMENT and the CORPORATION COUNSEL OF THE CITY OF NEW YORK, Respondents.

Supreme Court, Bronx County, June 4, 1931.

*John J. McKelvey*, for the petitioners.

*Arthur J. W. Hilly, Corporation Counsel* [*Joel J. Squier* and *Samuel K. Handel* of counsel], for the respondents.

HAMMER, J. This application is for an order of mandamus directing the board of estimate and apportionment and the corporation counsel of the city of New York to institute proceedings to determine the compensation justly to be made to the petitioners for the legal closing of a portion of Spuyten Duyvil road in the borough of The Bronx, city of New York. The petitioners are joint owners of land, more fully described in the petition, abutting the south side of Spuyten Duyvil road. By resolution of the board, adopted June 13, 1924, pursuant to section 442 of the Greater New York Charter (as amd. by Laws of 1917, chap. 632), that part of Spuyten Duyvil road lying southwesterly of the proposed United States pier and bulkhead line of the Harlem River ship canal, borough of The Bronx, was closed and discontinued and removed from the map of the city of New York. The petitioners claim that their public and private easements of access and egress to their land from an easterly direction by means of said road have been cut off and destroyed. They allege no damages have been paid for the injury to their land and the destruction of the said

easements and no proceedings instituted to ascertain damages to their lands or those of landowners injuriously affected by the closing and no statutory proceedings have been directed by the local authorities or instituted by the corporation counsel to ascertain said damages. The corporation counsel in his answer admitting ownership has denied all other claims and set up certain affirmative defenses. The resolution legally closed and discontinued the portion of Spuyten Duyvil road in question to the extent only that such portion is a public street. The petitioners' public easements of access and egress to their land from an easterly direction by means of said Spuyten Duyvil road have been cut off. The street closing act (Laws of 1923, chap. 752) provides the method to be followed by the municipal authorities in closing and discontinuing a street or public highway in the city of New York. The resolution adopted was under the Greater New York Charter and not under the street closing act, and did not impose any duty upon the corporation counsel to institute proceedings and no such duty exists, by reason of any law or resolution, or order or direction of the board on the part of the corporation counsel to institute proceedings for ascertainment of compensation to petitioners and other property owners affected. The resolution did not extinguish the private easements. Assuming, but not deciding, as petitioners allege that the portion of Spuyten Duyvil road in question has been physically closed since March, 1930, and that private easements have been curtailed, mandamus is not the appropriate remedy therefor.

In *Reis* v. *City of New York* (113 App. Div. 464; affd., 188 N. Y. 58), in passing upon the effect of the procedure followed by the board of estimate and apportionment under section 442 of the Greater New York Charter, the court said (at p. 70): "All that it is necessary to decide on this branch of the case and all we do decide is that the procedure followed by the board of estimate and apportionment and the mayor under section 442 of the charter sufficed to effect a legal closing and discontinuance of the part of Hawthorne street in question as a *public street* against any claim or right of the plaintiff." (Italics mine.)

In *Matter of Mayor, etc., of New York* (135 N. Y. 253, at p. 260) it is stated: " So also in regard to highways. It has been truly said it is not the amount of travel upon a highway which distinguishes it as a public instead of a private road. A private road might have the larger amount. It is the right to travel upon it by all the world, and not the exercise of the right, which makes it a public highway. A public highway to which the public has not the right of access would be an impossible creation. And so a public use might generally be defined as the use which each

individual might of right demand upon the same general terms and for the same general purposes as any other individual."

In *Matter of Burns* (155 N. Y. 23, at p. 26), in discussing the term "highway" as used in the statute there under consideration, while it was held that this term in a strict sense does not include streets or avenues in cities, citing *Matter of Woolsey* (95 N. Y. 135), yet as the court there stated, "it cannot be denied that such streets or avenues are highways in the broad sense."

It is manifest, therefore, that the legal closing effected by the adoption of the resolution under section 442 of the charter did not deprive or interfere with the petitioners' private easements but affected the petitioners only to the extent that for the purpose of access and egress their right to "demand upon the same general terms and for the same general purposes as any other individual" the use of the road in question has been curtailed.

Nor can it be said that this interference with their "public use" of said street resulted in damage to the petitioners. In *Reis* v. *City of New York* (113 App. Div. 464, at p. 466) it is said: "Over streets and highways the Legislature has control, and may when no private interests are involved or invaded close them, and altogether relinquish their use by the public. (*The People* v. *Kerr*, 27 N. Y. 188–192.)" And further the court says: "And after referring to *Smith* v. *City of Boston* [7 Cush. 254] the court quotes therefrom: ' In that case SHAW, Ch. J., says: " The damage must be the direct and immediate consequence of the act complained of, and remote and contingent damages are not recoverable. The petitioner has free access to all his lots by public streets. The burden of his complaint is that in going to some of his houses, in some direction, he may be obliged to go farther than he otherwise would. The inconvenience sustained was not such an injury done him in his property as to entitle him to damages." ' And in *Fearing* v. *Irwin* [55 N. Y. 486] the court say: ' It is objected, however, that the act is not constitutional, for that it does not provide compensation for those who are deprived of a right of way through the road and the lane. They were public roads; and it is said owners of land adjoining a public road have a right of property in going to and from their premises over it. This court has held, however, that, though one public way to property is closed, if there is another left the property owner sustains no actionable damage. (*Coster* v. *Mayor, etc.*, 43 N. Y. 399.) It is quite plain, from the diagrams shown, that there is a public way left to all parts of this property. (See, also, *People* v. *Kerr, supra.*) ' "

On the diagram in the papers herein it appears that Spuyten Duyvil road remains, as formerly, both legally and physically

open in front of petitioners' property and to the northwest by which way petitioners may go from their property to or come from the adjacent neighborhood and the city generally by intersecting public streets. They may be obliged to go further than if the closed portion remained open but any damages resultant are remote and contingent and are not recoverable.

For the foregoing reasons this motion is denied.